## ANDERSON-KERR, Inc., v. VAN METER et al.

No. 23830. Opinion Filed March 7, 1933.

Shirk, Danner & Phelps, G. A. Paul, and Floyd C. Dooley, for plaintiff in error.

W. H. Brown, Municipal Counselor, and Harlan T. Deupree, Assistant, for defendant in error J. W. Van Meter, Building Superintendent of Oklahoma City.

Twyford & Smith and Edward Howell, for defendants in error C. H. Wright, Receiver of Sunray Oil Company, the Reinhart & Donovan Company, and Jameson & Grimes, Inc.

C. H. Ruth, for defendant F. A. Ruth and others.

McNEILL, J. This is an appeal from the district court of Oklahoma county involving a permit to drill an oil and gas well within the corporate limits of Oklahoma City on a platted tract of ground of approximately 63/100 of an acre, and within non-drilling territory, in violation of the ordinances of said city.

Plaintiff in error acquired a lease on the premises in question on December 16, 1931, and made application to J. W. Van Meter, building superintendent of said city, to drill a well cn the same, the proposed location of said well being 50 feet east of the east line of Byers avenue, which is the west line of the drilling zone, referred to in the ordinance of said city as U-7 Use, or oil and gas district. It is conceded that the action of the building superintendent in denying the permit was proper in that he had no discretion to consider the equities of any of the parties. The plaintiff in error, being the lessee, appealed from the action of the building superintendent to the board of adjustment. Notices were thereafter given to the owners of property contiguous to that described in the lease as provided by the ordinances of said city. A hearing was had by the board of adjustment, and on February 29, 1932, an order was made by the board of adjustment directing the building superintendent to issue a permit to plaintiff in error to drill an oil and gas well on said premises. The board of adjustment, as set forth in the brief of plaintiff in error, made findings in part as follows:

"The board further finds that the leasehold area above described, upon which Anderson-Kerr, Inc., applies for permit to drill a well, consists of less than two and one-half acres in area of platted land, and is not of sufficient contiguous area to constitute an oil and gas drilling 'block' for which permit should be issued.

"The board further finds that permits have heretofore been granted to other parties than plaintiff, either by order of the board of adjustment or by order of the district court of Oklahoma county on appeal from orders of the board of adjustment, on adjacent and contiguous tracts of land within the U-7 zone to said lots 1, 2, 3 and 4, except that portion of the old bed of the North Canadian river immediately adjoining this described area on the east.

"The board further finds that wells upon the adjoining and adjacent land for which permits have heretofore been granted will drain the oil and gas from under the premises on which plaintiff holds an oil and gas lease and asks for a permit.

"The board further finds that if no permit be issued to plaintiff to drill a well upon said lots 1, 2, 3, and 4, that the oil and gas thereunder will be drained into the adjoining wells and plaintiff and its lessors denied the right to recover any oil and/or gas underlying said land, and a great injustice worked upon plaintiff and its lessors, the owners of said land.

"The board further finds that there is a tract of land lying adjoining and adjacent to said lots 1, 2, 3, and 4, which is a part of the old bed of the North Canadian river, and that for the purpose of constituting a drilling block that portion of the bed of the North Canadian river lying parallel between the center of the North Canadian riverbed and the east line of said lots 1, 2, 3, and 4 should be attached to said lots 1, 2, 3 and 4 for the purpose of constituting a drilling block.

"The board further finds that according to the verified application filed herein and the evidence received, that plaintiff herein owns an oil and gas mining lease on more than 51 per cent. of the total area of said drilling block, as last above described, and that a permit to drill one oil and/or gas well thereon should be granted to Anderson-Kerr, Inc., in order to avoid the working of an unnecessary hardship upon it and the present owners of said land and that

the granting of such permit would be within the intent and purpose of said ordinance of said city and would not be contrary to the public interest."

The city of Oklahoma City, C. H. Wright, receiver of Sunray Oil Company. Sunray Oil Company, Reinhart-Donovan Corporation, Jameson-Grimes, Inc., a corporation, being the owners of oil and gas leases and premises contiguous to or in close proximity to said premises, appealed to the district court of said county from the decision of the board of adjustment. The defendant F. A. Ruth, as a taxpayer, also joined in said appeal. Thereafter the case was tried in the district court of Oklahoma county, and judgment rendered on May 7, 1932, reversing the order made by the board of adjustment. The court made no special findings, but found from the evidence that the permit heretofore granted by said board should be set aside and held for naught. and denied to plaintiff in error a permit to drill an oil well on said property. The lessee, Anderson-Kerr, Inc., plaintiff in error. has appealed from said judgment to this court.

The premises in question are described as lots 1, 2, 3, 4, block 4, Second Riverside addition to Oklahoma City. It does not appear to be disputed that the Western Paving Company for a number of years was the owner of blocks 1, 2, 6, 7, and 8 of East Grand Avenue addition, consisting of about 10 acres, and the aforesaid lots in said block 4. The aforesaid 5 blocks. to wit, 1, 2, 6, 7, and 8. were in the bend of the old channel on the east, north, and west, and bounded on the south by the main line and spur tracks of the Missouri, K. & T. Ry. Company.

Prior to March 6, 1931. the Western Paving Company executed a lease on aforesaid five blocks to the Slick interests, which was later assigned to the Wepaco Leases. Inc., a corporation, and on the same date the said Wepaco Leases Co., Inc., applied to the building superintendent for a permit to drill a second well, which was to be located on the south of the boundary line of lot 1. block 1, of said addition. Prior to the aforesaid application of plaintiff in error. permission had thus been obtained to drill two wells on said blocks 1, 2, 6, 7, and 8. The permit to drill said second well was granted on April 13, 1931, by the board of adjustment, and an appeal was taken therefrom by the Western Paving Company to the district court of Oklahoma county by reason of the inclusion of the north half of the right of way to the south. The case was tried in said district court on December 11, 1931, and the company secured a permit for its well No. 2.

Four days thereafter, on December 15, 1931, and after said hearing in said district court, the Western Paving Company gave a quitclaim deed to G. S. Simpson for the four lots in question. On the following day, December 16, 1931, said G. S. Simpson and wife executed an oil and gas lease to Anderson-Kerr, Inc., plaintiff in error herein. It also appears that said lease provided that the lessee should:

"Make immediate application to the city of Oklahoma City for a permit to drill one well upon some part of the above-described land, and to bear all expenses in connection with such application for a permit to drill and the appeal therefrom, if necessary to and including a trial in the district court, and to pay all permit fees and bond premiums necessary to obtain such drilling permit from said city. * * *

"Lessee shall not be bound to drill said well in the event any additional tract or tracts of land are attached to the land above described by the board of adjustment of Oklahoma City, or by the district court of Oklahoma county, wherein the owners of such land so attached has or have the privilege of participating in the twenty-one/thirty-seconds working interest of lessee."

It also appears that there are seven producing wells on the property surrounding the lease of Anderson-Kerr, as follows:

"(a) On the Reinhart & Donovan Company-Sunray lease, the well is located on lot 5, block 4, East Grand Avenue addition, and is approximately 640 feet in a southeasterly direction from the Anderson-Kerr, Inc., leased property.

"(b) On the Western Paving Company-Slick lease there is one well directly south of lot 14, block 1, East Grand Avenue addition. and approximately 256 feet in a northeasterly direction from the Anderson-Kerr, Inc., leased property. On this same lease there is another well at the extreme west end of lot 8. block 8, same addition. and approximately 954 feet east of the property in controversy.

"(c) On the Jameson & Grimes, Inc., lease there is a well on lot 5, block 2, Second Riverside addition, and approximately 442 feet in a general northeasterly direction from the Simpson-Anderson-Kerr, Inc., leased property.

"(d) The Roy St. Louis well appears to be located on lot 4. block 1. Second Riverside addition, and is approximately 590 feet in a general northeasterly direction from the Anderson-Kerr property.

"Wepaco Well No. 1 on lot 8, block 8,

East Grand Avenue addition, 954 feet, easterly direction from plaintiff in error's proposed well.

Wepaco well No. 2 on lot 14, block 1, of East Grand avenue addition, 256 feet, northeast from said proposed well.

"Phillips Petroleum Well is 1,100 feet southwest of the proposed well, and which well had been permitted to be drilled within the nondrilling territory, at a distance of 260 feet from the zone drilling line, after an appeal to the district court, from which action the city of Oklahoma did not appeal."

The plaintiff in error contends for the following propositions:

### Proposition 1.

The provisions of the ordinance applicable to the drilling of an oil well within the corporate limits vests in the board of adjustment the right to extend drilling privileges to a lessee having less than two and one-half acres in area.

### Proposition 2.

The provisions of the ordinance applicable clothe the board of adjustment with the right to order issuance of drilling permit on an area within the 300-foot nondrilling zone.

### Proposition 3.

Contemporaneous construction coupled with common usage, practice, or a course of conduct indicating a particular understanding of the meaning of an ordinance provision and aided by an interpretation of an inferior court will generally be upheld, especially where a different rule would cause mischief.

### Proposition 4.

The board of adjustment derives its authority from the statute and is vested not only with ordinance but statutory authority on appeals to it to consider general exceptions in favor of those who should not in the light of special conditions come within the purview of the general zoning inhibitions.

### Proposition 5.

Sitting as a court with judicial discretion, the findings of the board of adjustment and decisions of the district court are conclusive upon this court unless the discretion has been abused.

The ordinances of the city were introduced in evidence, being ordinances Nos. 3943 and 3944. These were amendments to the general zoning ordinance of the city authorized by chapter 178 of 1923 Session Laws [O. S. 1931, secs. 6170-6179], and were passed as regulations in the exercise of the police power of the city. The applicable provisions of said city ordinance are as follows:

"Drilling Ordinance No. 3944."

Section 1 provides:

"That for the purpose of the protection of lives and persons of the citizens of the city of Oklahoma City, and of the public generally, and the protection of property from the danger of fire, explosion, gas, public nuisances and other hazards dangerous to public peace, health, and safety as a result of the drilling for and production of petroleum and natural gas within the U-7 or oil and gas district as defined in the ordinances of the city of Oklahoma City, it shall be unlawful and an offense for any person, firm or corporation, * * * to engage in any work in the erection of derricks or oil well equipment for the production of oil or gas or drilling of oil wells."

Section 2 provides:

"A. It shall be unlawful and an offense for any person, firm or corporation to drill or put down any petroleum or gas well within the corporate limits of the city of Oklahoma City, except within the limits of the U-7 or oil and gas district, and unless permit therefor shall have been first obtained.

"B. It shall be unlawful and an offense for any person, firm or corporation to drill, or put down more than one petroleum or gas well upon any one block." (The term "block" was then defined.)

"C. In unplatted tracts no well shall be drilled or put down upon any block or tract of less than 5 acres in area, and in platted tracts no such well shall be drilled or put down upon any block of less than 2½ acres in area except as otherwise provided. Before a permit shall be granted upon any platted block or unplatted tract of land which is adjoining or contiguous to any unplatted tract of less than 5 acres or any platted block of less than 2½ acres in area, upon application of any owner, lessee or other interested person, firm or corporation in said unplatted tract of less than 5 acres or platted block of less than 2½ acres, or in any adjoining or contiguous unplatted tracts or platted blocks aforesaid, the board of adjustment shall, upon giving notice and holding a hearing in the same manner as is provided for appeals from the building superintendent, attach said unplatted tract of less than 5 acres or platted block of less than 2½ acres, in whole or in part, to such contiguous or adjoining unplatted tract or tracts or platted block or blocks, for the purpose of permitting a well to be drilled in which said unplatted tract of less than 5 acres or platted block of less than 2½ acres may participate. The said board of adjustment shall provide the prorata or ratable basis, on which the said unplatted tract of less than 5 acres or platted block of less than 2½ acres shall participate in said well or wells, and in addition thereto shall make any equitable order in relation

thereto which may be proper in order that subsbtantial justice may be done. Any interested party affected by said order, may appeal to the district court as provided by law. * * *"

E. This section provides for the application to be filed upon a request for drilling and further specifically provides:

"Upon such hearing, the board shall examine all witnesses under oath and keep a record of its proceedings and shall have authority and shall make any requirements, regulations or orders which may be necessary, proper or equitable for all persons interested therein, and shall protect and safeguard the rights of all parties affected by such order. Any party affected by said order may appeal, as provided by law, to the district court."

Section 25 provides:

"That the provisions of this ordinance shall be deemed to be the minimum requirements for the preservation of the public peace, health and safety, and that compliance with all the terms hereof shall not be deemed to relieve any person, firm or corporation from any duty imposed by law to use all necessary care and take all necessary precautions for the safeguarding of the public peace, health and safety. * * *"

Section 2 provides as follows:

"No well shall be drilled or put down for the production of petroleum and/or natural gas upon any property within 300 feet of the boundary line of the U-7 use district or drilling territory of the zoning ordinance, or within 300 feet of any property used for public school purposes; and such property, including such school property, shall be known as the nondrilling territory in the U-7 use district. Before a permit shall be granted upon any block or tract of land which is adjoining, contiguous or within 300 feet of any nondrilling territory aforesaid, upon application of any owner, lessee, or other interested person, firm or corporation in said nondrilling territory or in any adjoining or contiguous blocks or tracts aforesaid. the board of adjustment shall upon giving notice and holding a hearing, in the same manner as is provided for appeals from the building commissioner, attach said nondrilling territory. in whole or in part, to such contiguous or adjoining blocks or tracts for the purpose of permitting said nondrilling territory to participate in any well or wells that may be drilled upon said adjoining or contiguous blocks or tracts aforesaid. Said board of adjustment shall provide the prorata or ratable basis on which said nondrilling territory may so participate as aforesaid in said well or wells, and shall make any equitable order

in relation thereto which may be proper in order that substantial justice may be done, from which any interested party may appeal to the district court as provided by law. The provisions of this section relating to appeals to the board of adjustment shall not apply to any nondrilling territory where the parties interested therein have by agreement attached said property to adjoining or contiguous property, so as to carry out the intent of this section."

The aforesaid zoning statute provides for the creation of a board of adjustment and defines its powers, which, as given in section 7 of said act, are as follows:

"The board of adjustment shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this act or of any ordinance adopted pursuant thereto.

"(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

"(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

"In exercising the above-mentioned powers such board may, in conformity with the provisions of this act, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken."

In the brief of Reinhart & Donovan Company. C. H. Wright, receiver for Sunray Oil Company. and Jameson & Grimes, Inc., defendants in error, appears a map, which for convenience and clarification we incorporate herein. This map is the same as Exhibit "B" of the case-made with certain exceptions hereinafter noted. It shows the lots, blocks, river channel. etc., oil well locations in the vicinity of Reno avenue and Byers avenue in said city. and the original west zone line. The following is not shown on original map. to wit, the nondrilling territory, and the west zone line as established by 300 foot ordinance. The map above referred to is as follows:

WEST ZONE LINE AS ESTABLISHED BY 300-FOOT ORDINANCE

NON-DRILLING TERRITORY

ORIGINAL WEST ZONE LINE

The paramount question is whether the board of adjustment of said city had the right to grant permission to plaintiff in error to drill the proposed well on said premises. The ordinances required the minimum of two and one-half acres, as applied to the instant case. There was only 63/100 of an acre in question and plaintiff in error proposed to drill its well 50 feet from the west U-7 use or oil drilling zone line, while the ordinances as we construe them prohibited the drilling of an oil and gas well within 300 feet of said line. Plaintiff in error knew the conditions and circumstances surrounding the drilling of a well on the proposed location of said premises. The evidence reveals that the premises in question will ultimately be drained by the Wepaco well No. 2, which is located in a northeasterly direction 256 feet from the proposed well. It is to be observed that this tract of land is approximately 1,200 to 1,500 feet south and east of the Huckins Hotel, one of the leading hotels

in the main part of said city; that a public school is located two blocks west and one block south; that one of the wells in the aforesaid block of the Western Paving Company at the time it was brought in ran "wild," and beyond control for a period of eight hours, and it is common knowledge in Oklahoma City that other wells in the oil field nearby have done likewise, spraying oil and gas for a distance of several miles over said city.

It is conceded that the drilling of a proposed well would be in violation of the ordinances in that the acreage is insufficient and within 300 feet from the west boundary line of said U-7 use drilling zone. However, plaintiff in error contends that it is entitled to the permit if a state of facts exists to justify an exception to said inhibitive terms contained in said ordinances. The ordinances are not questioned as being a valid exercise of police power. To change the fixed boundary line of a zone ordinance

or to render the same nugatory by a court would be usurpative judicial legislation. The provisions of the ordinances in the regulation of the police power of said city do not contravene the constitutional provisions of this state or the Constitution of the United States. Such legislation is a proper exercise of the police power of the state. Marblehead Land Company v. City of Los Angeles, 47 Fed. (2d) 528; Winkler v. Anderson (Kan.) 177 P. 521, 3 A. L. R. 268; Euclid v. Ambler Realty Co., 272 U. S. 365, 47 Sup. Ct. Rep. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn v. Board of Public Works of the City of Los Angeles, 274 U. S. 325, 71 L. Ed. 1074, 47 Sup. Ct. Rep. 594; In re Dawson, 136 Okla. 113, 277 P. 226; Marrs v. City of Oxford, 25 Fed. (2d) 541; Bandini Petroleum Co. v. Superior Court (Cal.) 293 P. 899. In other words, as applied to this case, it was necessary, before the board of adjustment had any authority to grant an exception to plaintiff in error, that four requirements must be met.

First: That the granting of such permit would not be contrary to public interest.

Second: That the literal enforcement of the provisions of the ordinance will result in unnecessary hardship.

Third: That by granting the permit contrary to the provisions of the ordinance, "the spirit of the ordinance shall be observed."

Fourth: That by the granting of such permit "substantial justice be done."

The governing body of the city has a right to regulate the oil industry and the drilling of the wells within its corporate limits or to prohibit them from being drilled in certain designated territory. If plaintiffs were authorized to drill wells on the premises in question, the proposed well would drain the premises from approximately a radius of 300 feet from the location of the well and thereby drain the land beyond the limits of the zone. The U-7 use zone is in reality divided into two districts, to wit: A nondrilling territory comprising the area of 300 feet wide from the outer borders of said zone, and the territory constituting the drilling zone 300 feet inside from outer limits of the U-7 zone.

If the plaintiff located its well at this proposed site, it would drain the area of approximately eight acres, 90 per cent. of which would belong to others. Plaintiff in error would by reason thereof be permitted to enrich itself from the property of those whose lands are outside of the zone limits. To deny such a privilege, from this record, is not an "unnecessary hardship" and a failure to do substantial justice. The hazards which may be increased by the drilling of the proposed well at this particular location and the rights, welfare, and safety of the lives and property of others must not be ignored. We do not believe that the board of adjustment, under the evidence as shown by this record, were justified in granting a drilling permit to the lessee on the tract of land in question. The owner of said tract of land has not joined in this appeal, and if the owner of said tract of land or its lessee has been discriminated against, there is apparently no reason why they should not have sought other relief than the drilling of the well in question. The evidence is that this land, consisting of 63/100 acres, will be drained by Wepaco Well No. 2. To uphold the board of adjustment in issuing the drilling permit within a nondrilling territory, under this record, would nullify the ordinance. This the board of adjustment cannot do. Nor can the governing body of the city disregard or suspend the same without special provision authorizing the same. In re Dawson, supra; State v. Graves, 19 Md. 351, 81 Am. Dec. 639; Commonwealth v. City of Worcester, 20 Mass. (3 Pick.) 462; Ristine v. Clements (Ind. App.) 66 N. E. 924; Pulver v. State, 83 Neb. 446, 119 N. W. 780. The equities were not with the ruling of the board of adjustment.

It is urged that the findings of the board of adjustment, which is quasi judicial, are conclusive upon this court unless the discretion has been abused. The board of adjustment is not a court of record. The instant appeal is not from the board of adjustment. It is from the judgment of the district court of Oklahoma county sitting as a court of equity. The district court of Oklahoma county found from the facts and circumstances that the decision of the board of adjustment was unauthorized under the law and that the plaintiff in error was not entitled to drill on the premises in question. We have so often announced the rule that where a case is tried without a jury and is of purely equitable cognizance, the same may not be reversed by the Supreme Court unless the judgment be clearly against the weight of the evidence. See Reuck v. Green, 84 Okla. 131, 202 P. 790. Anderson v. Moore, 118 Okla. 242, 247 P. 391; Parks v. Sinai Oil & Gas Co., 83 Okla. 295, 201 P. 517; Interstate Bldg. & L. Co. v. Oklahoma City, 84 Okla. 227, 203 P. 172; Dike v. Martin, 85 Okla. 103, 204 P. 1106.

Even though the board of adjustment may

have permitted the drilling of other wells in violation of the literal terms of the ordinances, yet that fact would not give plaintiff in error precedent or right to insist in a court of equity that plaintiff in error should be permitted to do likewise.

The defendant in error Ruth attacks the constitutionality of the aforesaid zoning act in that said act attempts to establish a court by the creation of said board of adjustment with powers to administer oaths and compel the attendance of witnesses, and that the title to the act, to wit:

"An Act relating to the powers of cities, with respect to buildings, sites, areas, trades and industries: authorizing the creation of zoning districts, and declaring an emergency"

—makes no reference by suggestion or inference to such a court. We have examined this contention and authorities cited in the briefs, and find the emphasis stressed on this proposition is without merit.

After a careful review of the record, we find no prejudicial error. The judgment of the trial court is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, B A Y L E S S, and WELCH, JJ., concur. RILEY, C. J., and BUSBY, J., absent.