BEVERIDGE et al. v. WESTGATE OIL CO. et al.

No. 25862.   March 19, 1935.

Rehearing Denied April 30, 1935

See, also, 168 Okla. 200, 32 P. (2d) 719.

Harlan Deupree, Municipal Counselor, T.

F. Weiss, Special Asst. Municipal Counselor, and P. E. Gumm, for plaintiffs in error.

McLaury & Hopps, for defendant in error Westgage Oil Company.

Short & Pierson, for intervening royalty owners.

OSBORN, V. C. J. On August 8, 1933, the Westgate Oil Company and Grison Oil Corporation filed a joint application with the building superintendent of Oklahoma City for a permit to drill a well on block 12, Phillips and Meade East Side addition to Oklahoma City, which was by him denied and appeal was perfected to the board of adjustment. On August 28, 1933, the board denied the permit. The cause was appealed to the district court of Oklahoma county, and on October 4, 1933, the district court ordered that a permit to drill be granted, not as an exception under the ordinance, but under the terms of the ordinance. From said judgment the building superintendent appealed to this court. On November 2, 1933, the date of the filing of the appeal, there was also filed an application in this court by the building superintendent for supersedeas and stay of the judgment of the district court granting said permit, which application was by this court denied on November 4, 1933. Thereupon, pursuant to the judgment of the district court, permit was issued to said companies to drill said well, the appeal still pending in this court undetermined. On May 8, 1934, the judgment of the trial court ordering said permit to be issued was reversed for the reason, as set forth in the opinion filed therein, that the permit ordered to be issued by the district court was issued, not as an exception to the ordinance relating thereto, but, as stated by the district court in its judgment, "under the terms of the ordinance."

The opinion pointed out that a certain provision of the ordinance, hereinafter referred to, was overlooked and violated by the judgment of the district court, and for said reason the judgment was erroneous. The cause was remanded "to proceed in conformity with the views herein expressed." Van Meter v. Westgage Oil Co., 168 Okla. 200, 32 P. (2d) 719.

At this point we direct attention to the city ordinances and to the exact location of the well in question. Long prior to the present application, blocks 12 and 13 of Phillips and Meade East Side addition were, by authority of the board of adjustment, consolidated as a drilling area. A well was authorized to be drilled on block 13, which is immediately south of block 12. There is no question herein concerning the right of the companies to drill on said lands except for the restrictions and regulations of the ordinance relating to drilling. The north boundary line of block 12 is likewise the north boundary line of what is known as the "U-7 Use Zone," which zone was established by the ordinances of the city as territory in which drilling for oil is permitted under certain conditions and restrictions. By the provisions of ordinance No. 3944 of the city of Oklahoma City, drilling within 300 feet of the outer line of the zone is prohibited. This 300-foot strip is commonly known as the "buffer zone." Block 12 is 320 feet in depth from north to south and the north 300 feet of said block is within said buffer zone. A strip of land 20 feet wide running east and west along the south edge of the block is within drilling territory and outside of the buffer zone, and except for certain regulations and restrictions contained in the ordinance, hereinafter noticed, drilling is not prohibited in said strip. This strip is contiguous to the north boundary line of Second street, which runs east and west along the south side of block 12.

The ordinance prohibits drilling, as stated above, in said buffer zone and likewise prohibits drilling within 300 feet of any property "used for public school purposes." The block immediately west of block 12 is so used. The district court, by its judgment, provided that the well should be drilled not less than 300 feet from the east boundary line of the property used for school purposes. This located the well at a point in block 12, 19 feet north of the south boundary line of said block, and in the eastern part of said block.

After this court had refused to stay the force and effect of the judgment of the district court ordering the issuance of said permit, and after said permit had been granted pursuant to said judgment, said companies went upon said location in said block and drilled to a depth of 5,078 feet, or within a few hundred feet of the known location of an oil producing stratum, said drilling having been pursued at a cost of $60,000. When this court determined that the issuance of said permit was erroneous, said companies ceased all operations, thus leaving said well uncompleted at a total depth of 5,078 feet and prior to the production of oil.

Supplemental pleadings were filed in the trial court in which it was alleged that said well had been drilled almost to completion at great expense and in good faith; that the gas pressure in said field was practically exhausted and that the fire hazard incident to completion of said well was practically nonexistent; that the territory in which the well was located had now been given practically over to oil production and that the use for oil drilling purposes was much more valuable than for any other use, and that if said well were not completed a large amount of recoverable oil would be permanently lost, due in the main to a decreased and decreasing gas pressure, and that a large amount of natural resources would be forever lost and the public interest would thereby be impaired and that the public peace, health, and safety of the citizens generally would not be prejudicially affected or impaired by the continuance of said operations. After sundry motions in the district court had been overruled, the cause proceeded to a further hearing on the issue of the granting of a permit under an exception to said ordinance. The trial court made findings of fact and conclusions of law, to which we shall advert.

The board of education of Oklahoma City was a party protestant when the matter was orginally tried in the district court. Pending the appeal to this court, the board of education leased the school property adjacent to the premises in question, and when the matter was tried in district court the second time, the attorney for the school board announced that the board of education had changed its position and would withdraw from the case.

Only J. L. Beveridge, building superintendent, and the city of Oklahoma City have filed petitions in error in the instant appeal.

On May 12, 1934, by leave of court, a petition in intervention was filed by John J. Coates and W. H. Slaughter, as trustees for 600 royalty holders under communitized oil and gas leases covering block 12, and other adjacent property. The principal allegations of the petition in intervention related to the interest of the royalty holders in the subject-matter of the lawsuit and included a plea that the drilling of the well in question would be in harmony with the public interests and not contrary thereto. The petition prayed for the granting of said permit according to the request of the original application. The trial court overruled a motion to strike the above plea in intervention, which action of the court is assigned as error herein. We do not deem it necessary to pass upon the question, since it does not appear that any prejudice resulted to the plaintiff in error in allowing the filing of said petition in intervention.

The defendant city urges that the former opinion of this court (Van Meter v. Westgate Oil Co., 168 Okla. 200, 32 P. (2d) 719), is res adjudicata of all the issues involved herein, and consequently plaintiff was not entitled to a new trial in the district court. There is no merit in the contention. The cause was remanded with directions "to proceed in conformity with the views herein expressed." It was pointed out in the opinion that the trial court had neglected to take into consideration one of the restrictions of the ordinance, and had granted a permit under the ordinance and not under an exception thereto. It is therefore clear that the trial court was directed to hear the case with a view of determining whether or not there was justification in making an exception to the ordinance.

Upon appeal there is but one question presented, and that is whether or not the judgment of the trial court is contrary to the weight of the evidence.

The material findings of the trial court are as follows:

"3. The court further finds that under the evidence in this case that the well commenced to be drilled on block 12, Phillips & Meade East Side addition to Oklahoma City, Okla., has been located and partially drilled in compliance with ordinance No. 3944 of Oklahoma City except as to section 7 which relates to the property line provision thereof; that said well is located within 50 feet of the property line of said block and that under a decree of this court heretofore granting a permit to drill said well in said location, the same has now been drilled to an approximate depth of 5,000 feet at a considerable expense to the owners thereof.

"4. The court further finds that the area in said block is in excess of the minimum requirements under the terms of the ordinance for drilling locations.

"5. The court further finds that the drilling of said well in said block would not increase fire hazards or general danger to the welfare of citizens in that community and would not be such an operation as would violate the public safety spirit of the zoning ordinance herein referred to; that there would be no serious increase in fire hazard or danger to life and property

of citizens in that block or locality; that the gas pressure of such well is now so reduced as not to cause any danger from unusual flows of gas.

"6. The court further finds that inasmuch as plaintiffs have been permitted to drill said well to a depth of 5,000 feet at a large expenditure of money, that it would be an inequitable hardship on said applicants to refuse them the right to complete said well, under all of the evidence adduced at the trial herein; that said well is in and around a strictly producing oil area in the city oil field with producing wells adjacent to said property, and that to deny same would amount to a loss of several thousands of dollars to the applicants, and that the drilling of said well would not amount to a breaking down of the zoning ordinance in any sense so far as extensions thereof are concerned, and that the only objection offered thereto would be the fact that the same may be within the 50-foot limit of the property line, said property line being the south property line of said block and not on the side of said block which would have a tendency toward the extension of said ordinance."

It is contended by plaintiff in error, building superintendent, that the location of the well in block 12 at the particular point violates the spirit and intent of the general zoning ordinance (ordinance No. 3944), and that said permit should not have been granted, more especially by reason of its violation of section 7 thereof, as follows:

"Section 7. No well for the production of or mining for petroleum or natural gas shall be drilled or put down nearer than 50 feet from the property line of the tract on which such well is situated."

Briefly stated, the general spirit and intent of said ordinance is as set forth in section 1 thereof, as amended, "that for the purpose of the protection of lives and persons of the citizens of the city of Oklahoma City, and of the public generally, and for the protection of property from the danger of fire, explosion, gas, public nuisances, and other hazards dangerous to the public peace, health, and safety as a result of the drilling for and production of petroleum and natural gas," no person should drill any well, or perform labor in connection therewith, or build or erect any structures or equipment for such purposes within the U-7 zone without first having obtained a permit for such well to be drilled. No more than one well to a block is permitted; in unplatted tracts the term "block" is defined to mean "one contiguous tract of not less than 5 acres in area," and in platted tracts the area is fixed at 2½ acres; and by section 7, supra, it is provided that no well shall be put down nearer than 50 feet from the property line on the tract on which such well is situated. It is conceded that block 12 is of greater area than 2½ acres.

This court determined in the case of I. T. I. O. Co. v. Larkins, 168 Okla. 69, 31 P. (2d) 608, that, upon proper showing, the board of adjustment, and the district court upon appeal and trial de novo, were vested with authority to grant an exception to this provision of the ordinance. By section 6177, O. S. 1931, as supplemented by the provisions of the ordinances of Oklahoma City, the board of adjustment is empowered:

"To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

This provision had consideration by the court in the case of Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. (2d) 1068.

Whether or not the record discloses an unnecessary hardship owing to special conditions existent in this case, we turn to the record and to the findings of fact of the trial court. The trial court ordered the issuance of a permit on a prior hearing, from which an appeal was taken to this court. This court refused to stay the issuance of said permit, and after said permit had been granted, petitioners went upon said location and with an expenditure of $60,000 drilled a well to a depth of 5,078 feet. To deny a permit to petitioners would result in the utter loss of this large expenditure. That such expenditure was made is undenied, and that it would be wholly wasted and destroyed is irrefutable. But the building superintendent asserts that said expenditure was imprudently made by petitioners by reason of the fact that a contest was pending in the court as to the right to said permit. Petitioners introduced evidence showing that they acted in good faith after this court had refused to stay the former judgment and that no drilling was done until after February 22, 1934, when this court announced the opinion in the Larkins Case, supra. While financial loss to a citizen alone may not be used as a means of thwarting the general good, yet a large financial outlay, which

would be utterly destroyed or wasted, is a factor to be considered in determining the hardship which may be alleviated under the terms of the statute by the granting of an exception, and we cannot close our eyes to the tremendous loss in this case.

Moreover, it is shown by the testimony of scientific experts that said well will drain an area containing 560,000 barrels of oil; that the gas pressure has greatly decreased and is rapidly decreasing, and that such gas pressure is highly necessary to production of said oil, which, if a permit be not granted at this time, can never be produced by any methods known at present for the production of oil, and that in addition to the $60,000 above mentioned, petitioners will lose the value of said unproduced oil, amounting to a large sum of money. This is another factor which must be given due weight in determining the propriety of an exception to said ordinance.

The trial court found that the vicinity around said well is a strictly oil producing area, with producing wells adjacent to said property, and that the drilling of said well in said block would not increase fire hazard or general danger to the welfare of citizens in that community, and that the public safety spirit of the zoning ordinance would not be violated; that there would be no serious increase in fire hazard or danger to life and property of citizens in that locality, and that by reason of the location of said well in the south part of said block said location does not tend to break down or extend the limits of said U-7 zone. There was much controversy concerning these issues before the trial court, but after carefully reviewing the entire record we cannot say that the findings of the trial court on these material issues are against the weight of the evidence.

Not only have exceptions to this feature of the ordinance been recognized by this court, as in the Larkins Case, but it is shown in the record that exceptions have been granted thereto without appeal by the city of Oklahoma City. Each case must rest upon its own state of facts. It is for the legislative authorities of the city to fix the boundary where drilling operations may be carried on. But it is inconceivable that conditions surrounding every potential drilling location within the drilling territory could be so identical that an ordinance could be enacted which would apply to every such situation so that no injustice would result therefrom. It is not only for the courts to exercise extreme care and cau-

tion, in the light of the facts of each case, to see that the legislative will is not broken down, but also to zealously guard with the same care and caution the right of the individual property owner to take into his possession that which is rightfully his own, when such possession can be had without endangering the peace, health, and safety of his neighbors. While, under some conditions, not disclosed by the record in this case, the location of a well nearer than 50 feet of the boundary line of the street might be hazardous, resulting in the denial of a permit, the trial court found in this case, under the surrounding circumstances, the hazard to life and property was not increased by reason thereof. All of the property owners in said block are supporting the issuance of said permit.

It is argued that to grant a permit in this case is to authorize the granting of a permit in other cases along the buffer zone similarly situated, and that thereby the spirit of the ordinance will be broken down. We call attention, however, to the fact that each application for a permit must stand or fall upon its own particular facts and that the legislative authority of the city can be used, if it sees fit, to end such result.

It is said that, instead of an unnecessary hardship being shown in this case, the permit will enable petitioners to obtain an advantage by taking possession of more oil than it is entitled to take from the source of supply. We again call attention to the fact that the city has never been authorized to require ratable or equitable taking of oil from a common source of supply. The power conferred upon the city relates only to the public peace, health, and safety of the citizens, and its acts must be referable, if valid, to this grant of power alone.

In view of the finding of the trial court and in view of the extraordinary hardships which would be cast upon petitioners by a denial of said permit, we elect to follow the finding of the trial court, which is not against the clear weight of the evidence.

The judgment of the trial court is affirmed.

RILEY, WELCH, PHELPS, and CORN, JJ., concur. McNEILL, C. J., and BUSBY, BAYLESS, and GIBSON, JJ., dissent.

BUSBY, J. (dissenting). I dissent from the majority opinion. It authorizes an oil well to be drilled upon a city block within the corporate limits of Oklahoma City in which drilling is entirely prohibited by

various provisions of the munic'pal ordinances of that city. Pursued to its logical conclusion, this decision will inevitably result in a complete striking down of the power of municipalities to regulate or restrict exploration for oil and gas within their corporate limits.

The city of Oklahoma City, acting through its legislative body, has positively prohibited the drilling of oil wells in the territory involved, but the district court of Oklahoma county has, under the guise of granting an exception to the terms of the ordinances, authorized a well to be drilled in the face of the restrictions contained therein. The majority opinion affirms the trial court.

Herein I shall discuss the situation of the property in question and the provisions of the ordinance prohibiting drilling thereon, and the power of the district court to grant exceptions to the terms of the ordinance and the limitations upon that power.

The city's zoning ordinance and amendments thereto, among other classifications, divide the property included within the corporate limits into two classes as to the production of oil and gas. In portions drilling for oil and gas is prohibited; in other parts of the city a limited amount of drilling is permitted in accordance with and subject to restrictions contained in the ordinance. The territory in which drilling is permitted is described in the ordinance as the "U-7" use district. It is also known as the oil and gas district, or U-7 zone. Drilling within 300 feet of the outer line of the oil and gas district is prohibited by the terms of the ordinance. However, the property included within this 300-foot strip is permitted to participate in the proceeds of production. This 300-foot strip is known as "nondrilling territory," and is also commonly referred to as the "buffer zone."

The property involved in this action is in the north part of the U-7 use district area. The zone line constituting the outer boundary of the district runs along the north side of block 12. The block is 320 feet in depth from north to south; thus all of the property in the block is within the "buffer zone," except a 20-foot strip running from east to west along the southern edge of the block. This 20-foot strip, on which the companies seek to drill, faces on Second street, which runs east and west along the south side of the block.

Drilling within this 20-foot strip above mentioned is prohibited by another provision of the ordinance. Section 7 of ordinance No. 3944 (a part of the zoning ordinances) reads:

"Section 7. No well for the production of or mining for petroleum or natural gas shall be drilled or put down nearer than 50 feet from the property line of the tract on which such well is situated."

Similarly the ordinance prohibits drilling within 300 feet of any property "used for public school purposes." In this connection it should be stated that the block immediately west of block 12 is occupied and used for public school purposes. Thus drilling is also prohibited in the western portion of the block, including the western portion of the 20-foot strip mentioned.

Thus, to summarize, we are confronted with an application to drill on a block, all of which is in forbidden territory by virtue of one or more provisions of the ordinance. In the southeast corner of the block there is a strip of territory 20 feet in width and about 140 feet in length, constituting approximately 1/40th of the total area in the block, on which drilling is prohibited only by the terms of the 50-foot section of the ordinance quoted, supra. It is on this small portion of the block that the lower court has authorized the companies to drill, thereby granting an exception to the terms of that provision of the ordinance.

An application for permission to drill on the property involved was first filed before the building superintendent of Oklahoma City, who denied the permit. An appeal was then taken to the board of adjustment of Oklahoma City, where the permit was again denied. The case was then taken on appeal to the district court, where it was tried de novo. It was then appealed to this court, and, after the former decision herein reversing and remanding the cause, it was again tried de novo in the lower court. The procedure followed was in accord with the requirements of section 6177, O. S. 1931, as supplemented by the provisions of the ordinances of Oklahoma City.

The board of adjustment is empowered by statute:

"To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in un-

necessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." (Section 6176 in part).

Since the hearing and trial on appeal to the district court is de novo (sec. 6177, supra), it follows that the same power is possessed by that judicial tribunal as is specifically conferred by the above statute on the board of adjustment.

Dealing with the exercise of this statutory power to grant exceptions to the terms of the ordinance, this court, in the case of Anderson-Kerr, Inc., v. Van Meter et al., 162 Okla. 176, 19 P. (2d) 1068, separated the conditions upon which an exception should be granted into four requirements, namely:

"First, that the granting of such permit would not be contrary to public interest; second, that the literal enforcement of the provisions of the ordinance 'will result in unnecessary hardship; third, that by granting the permit contrary to the provisions of the ordinance, that 'the spirit of the ordinance shall be observed'; fourth, that by the granting of such permit 'substantial justice be done'."

It is important to mention at this point that the "unnecessary hardship" referred to in the second requirement as stated in the Anderson-Kerr Case, supra, by the terms of the statute (sec. 6176, supra), refers to hardship which is "owing to special conditions." It does not contemplate the general hardship which, under usual conditions, would ordinarily flow from the enforcement of the terms of the ordinance. Any limitation or restriction on the use of property by an owner may, in a general sense, be said to be a "hardship," but, unless such hardship **'is unnecessary and due to special conditions peculiar to the property involved,** neither the board of adjustment nor the district court on appeal is authorized to suspend the enforcement of the terms of the zoning ordinance by granting an exception thereto.

The majority of this court in announcing the rules of law applicable recognizes in syllabus 1 that the "unnecessary hardship" which authorizes an exception to the terms of the ordinance must be "owing to special conditions." I agree with that statement. However, I am unable to find in the situation presented by this case any special condition which results in unnecessary hardship. The only **special condition** which results in any hardship is the fact that, while this case was previously pending in this court and prior to the former decision (Van Meter et al. v. Westgate Oil Co., 168 Okla.

200, 32 P. (2d) 719), the companies which were seeking to drill the well spent a considerable sum of money in drilling the well to a depth of 5,000 feet, knowing, however, at the time, that the right to drill the well was being contested in this court. If this case were decided adversely to them, their useless expenditure of money in that respect would no doubt be properly classified as a hardship. However, it is a hardship which did not exist at the time they first applied for their permit, and came into existence only through their own reckless disregard of the possibility of an adverse decision.

Obviously, it cannot logically be urged that the failure of this court to order a supersedeas of the former judgment of the district court constituted a promise on our part to decide in favor of the companies. If it did, we broke our promise when we decided the first case adversely to them. If it did not, they knew when they were spending their money that they were faced with the possibility of an adverse decision which might cause them to lose the money expended. A more prudent operator would have refrained from the expenditure of money until the result of the litigation should be known. These companies chose to gamble on their judgment as to the result.

I cannot concur that this reckless expenditure of money in the face of a judicial contest constitutes an "unnecessary hardship owing to a special condition." Adopting such a rule is to accord to the reckless greater legal rights than would be accorded to the prudent. No judicial precedent for such a legal principle is cited in the majority opinion, nor do I find such an authority in the briefs.

In recognizing this expenditure of money as an element of "unnecessary hardship owing to special conditions," the majority opinion says:

"While financial loss to a citizen alone may not be used as a means of thwarting the general good, yet a large financial outlay, which would be utterly destroyed or wasted, is a factor to be considered in determining the hardship which may be alleviated under the terms of the statute by the granting of an exception, and we cannot close our eyes to the tremendous loss in this case."

It seems to me the financial loss in this case is purely a voluntary expenditure on the part of the companies which were willing to gamble on their judgment as to the

outcome of pending litigation, and that, as such, it cannot logically constitute the basis of a legal right. If the reckless expenditure of money constitutes the basis of a legal right, then any operator who desires to drill in prohibited territory in the corporate limits of a city contrary to the provisions of an ordinance can himself create the "unnecessary hardship owing to special conditions" contemplated by the statute in any case by the simple expedient of spending money in the belief that the courts will later approve their right to drill. Thus an operator may tear down a valuable building worth thousands of dollars in the expectation that he will later be permitted to drill on the site of the building contrary to the terms of the ordinance. No law forbids him to raze the building, provided he owns the building or obtains the permission of the owner thereof. If he does not later obtain permission to drill, he will have suffered a loss. He has thus created precisely the same condition in principle that exists in this case and should be accorded precisely the same legal rights by reason thereof. In my judgment the theory of the majority of this court on this element of the case is obviously erroneous. The special conditions contemplated by the statute should not be interpreted to include conditions produced voluntarily by the acts of the operator himself.

The only other factor in this case which the majority opinion treats as an "unnecessary hardship owing to special conditions" is that more oil can now be produced, if drilling is permitted, than could be produced at a later date. It is not shown by the record that this condition is not true in every other portion of the field in which drilling is prohibited. In other words, this condition is not shown to be special. The very purpose of drilling an oil well is to produce oil. If one doesn't drill, one obviously cannot produce. Unquestionably, the failure to drill a well on this block will result in some oil which underlies the block not being recovered. Obviously, the same is true of every other block within the corporate limits of Oklahoma City on which drilling is prohibited where oil lies beneath the block. This condition is not a special condition. On the contrary, it is a general condition, common to every other block in the city which lies over the oil pool. If this be an "unnecessary hardship owing to a special condition," then every other property owner within Oklahoma City who owns property lying over the producing oil sands is suffering an unnecessary hardship owing to special conditions.

To summarize this particular phase of the case, it is apparent from an examination of the majority opinion that any person owning a block of property within Oklahoma City or owning a lease upon a block of property within the city who can show that oil lies underneath the block which could not be recovered, if he is not permitted to drill and who, in expectation of being permitted to drill, spends money in preparation, has met the requirements of the law and is suffering an "unnecessary hardship owing to special conditions." I cannot concur in such a conclusion, nor can I subscribe to establishing such a judicial precedent. In my judgment the permit should be denied for the reason that the hardships suffered are not owing to such special conditions as are contemplated by the statute authorizing the district courts to grant exceptions.

In finding No. 5 of the trial court as quoted in the majority opinion, it was determined that the drilling in this case would not "violate the public spirit of the zoning ordinance herein referred to." In support of that conclusion the trial court in that finding determined that the drilling of the well in this block would not increase fire hazard, and that the gas pressure in the vicinity of such well was so reduced as not to cause any unusual danger from the flow of gas. The finding was based upon evidence produced by the companies seeking to drill to the general effect that drilling within the Oklahoma City field is now accompanied by much less danger than it was in the former stages of the field's development, owing to a gradual reduction of gas pressure throughout the field. To approve the finding of the trial court in this respect is to say that a well can be drilled without increase in fire hazard. If this finding of the trial court is correct; if thousands of barrels of oil can be produced in the immediate neighborhood of residential property, in close proximity to school property, and within 19 feet of a busy street without increasing fire hazard and without increasing the danger to the personal safety of individuals inhabiting and traveling through that neighborhood, then the entire theory of regulating and restricting the production of oil within the city limits rests upon a tottering foundation, for the only justification of restricting the use of property in this respect under the authority of the police power is the pro-

tection of life and property of the individual and the promotion of the general welfare of the community.

In many oil fields of the state there is little or no gas pressure, even in the first stages of development of the field. If the production in such a field can be accomplished without danger, as the trial court in this case says it can, then the right of a city to regulate or prohibit drilling in such a field lying within its corporate limits hangs on an extremely slender thread.

In my opinion this court should take judicial knowledge of the fact that inflammable substances such as oil and gas cannot be produced in large quantities in close proximity to dwellings without an increase in fire hazard. See Beveridge v. Harper & Turner Oil Trust, 168 Okla. 609, 35 P. (2d) 435. Assuming, as I do, that, notwithstanding the finding of the trial court, the drilling of the well in this case and the production of oil in the residential block involved must inevitably result in an increased measure of fire hazard and in an element of danger to persons and property in the immediate vicinity of the well, I am impelled to conclude that the 50-foot ordinance previously quoted is a reasonable measure for the protection of the public, including the school children who travel to and fro along Second street within a few feet of this well. The question of whether or not a regulation enacted under the authority of the police power is reasonable and necessary for the protection of the public peace, health, and safety is, in the first instance, one for the determination of the legislative department of government. The power to legislate upon this subject in matters relating to oil and gas has been delegated to the municipalities of this state. The legislative branch of the Oklahoma City government has acted and expressed its views upon the subject. A part of its judgment is expressed in the provision prohibiting wells from drilling within 50 feet from the street. It is not claimed by the companies that this provision of the ordinance is either unreasonable or unnecessary, except as it applies to their particular property. In other words, they do not question the validity of this provision of the ordinance, but only assert that it should not be enforced as against their property.

To uphold their contention in this case

and permit the drilling of a well in close proximity to a street establishes a judicial precedent for permitting wells to be drilled in close proximity to any other street within the U-7 use district, at least, unless it can be shown that such other street is a busier street than Second street in order to form the basis of distinction.

The record reveals that Second street is one of the busy thoroughfares of this city and is constantly used by the traveling public, and that the sidewalks along said street are periodically throughout the day used by school children in traveling to and from school, some 350 feet away. It is at once apparent that we are, in this case, establishing a judicial precedent for ignoring this provision of the ordinance in connection with practically every block within the U-7 use district. For all practical purposes we are repealing the section of the ordinance in question, and, in effect, are establishing the courts as a superior legislative body in determining the character of restriction that shall be imposed upon drilling operations. In so doing, we are, in my judgment, authorizing the district courts to go beyond the legitimate scope of judicial review in this character of case.

It is important to note in connection with the consideration of this case that block 12 is, for drilling purposes, attached to block 13, lying immediately south thereof, and that a producing well has been drilled in block 13. Thus the property owners in block 12 now participate with the property owners in block 13 in the proceeds of production. The well in block 13, however, was drilled in accord with the provisions of the ordinance.

In conclusion I would state that in my judgment the permit to drill in this case should be denied for the reason that drilling is prohibited on the territory in question by the provisions of the ordinance; that an exception to the terms of the ordinance should not be granted for the reason that no **special conditions** which will result in unnecessary hardship are shown to exist, and for the further reason that the protective spirit of the ordinance is violated by the exception approved in this case.

I am authorized to state that Chief Justice McNEILL and Justices BAYLESS and GIBSON concur in this dissent.