## K. & L. OIL CO. v. OKLAHOMA CITY et al.
### No. 1838.

District Court, W. D. Oklahoma.
April 4, 1936.

D. A. Richardson and K. W. Shartel, both of Oklahoma City, Okl., for plaintiff.

Harlan T. Deupree and A. P. Van Meter, both of Oklahoma City, Okl., for Oklahoma City.

McDERMOTT, Circuit Judge.

By a zoning ordinance passed in 1923, as amended in 1929, drilling for oil is prohibited in Oklahoma City except in the U-7 zone. The City Council of Oklahoma City has refused to place a forty-acre unimproved tract in the heart of one of its finest residence sections in the U-7 zone. The oil lessee proceeded to construct a derrick; its employees were arrested and

such arrests will continue. Contending that the zoning ordinance preventing drilling on this tract is an exercise of arbitrary power, this suit to enjoin the city from enforcing its zoning ordinance was brought. There is no adequate remedy at law.

■ The only question of substance, as I see the case, is this: Having zoned some other parts of the city for oil, is the Council's refusal to so zone this tract so capricious and unreasonable that it amounts to an arbitrary exercise of power? The test is this: Taking the situation as it now exists, can reasonable men honestly differ as to the zoning of this tract for oil? If they can, then the Council and not the court is the one to determine the question.

A short answer is that the planning board and the councilmen did differ; more than that, dozens of honest men and women, among them the pick of the town, under oath expressed diametrically opposed opinions, often with a temper that carried credentials of sincerity. Many of plaintiff's witnesses, with a depth of feeling growing out of many neighborhood meetings and street corner discussions, nevertheless freely admitted that other men as honest and reasonable as they, thought otherwise. If further proof is needed, I might suggest that if I were on the Council I would probably be a hung juror. It might have been wise to have stopped the development at Third Street, perhaps with a fringe along the extreme east and north and a 1,000 feet or more buffer zone. If the public knew the U-7 zone would be stopped in its tracks now, no irremediable damage would be done this choice section now restricted. There is a justifiable apprehension that drilling will still further encroach on this fine residence section, either under the law or under the rifles of the military. With the atmosphere so befogged with uncertainty, it might be as well to throw open the whole east side and have it over with. If state land is subject to the legislative branch of the government —delegated to the city—and if the state drills notwithstanding the law, doubtless the city authorities, or juries, would hesitate to punish a citizen who likewise ignores the statute and the ordinance authorized thereby. That the question is fraught with doubt and difficulty I have no doubt.

■ The power of cities to regulate the use of property for the common good by zoning is too well settled to justify citations of authority. This zoning ordinance has withstood every judicial challenge; it has been before the Oklahoma supreme court repeatedly, often with reference to zoning for oil. Beveridge et al. v. Westgage Oil Co. et al., 171 Okl. 360, 44 P.(2d) 26; Van Meter et al. v. Westgage Oil Co. et al., 168 Okl. 200, 32 P.(2d) 719; Indian Territory Illuminating Oil Co. et al. v. Larkins et al., 168 Okl. 69, 31 P.(2d) 608; Anderson-Kerr, Inc., v. Van Meter et al., 162 Okl. 176, 19 P.(2d) 1068; Van Meter et al. v. H. F. Wilcox Oil & Gas Co. et al., 170 Okl. 604, 41 P.(2d) 904; Beveridge et al. v. Harper & Turner Oil Trust et al., 168 Okl. 609, 35 P.(2d) 435. The Supreme Court of the United States has sustained the $200,000 surety bond feature of the ordinance. Gant et al. v. Oklahoma City et al., 289 U.S. 98, 53 S.Ct. 530, 77 L.Ed. 1058. See, also, Judge Vaught's opinion in Cromwell-Franklin Oil Co. v. Oklahoma City (D.C.) 14 F.Supp. 370.

■ The early case of Ohio Oil Co. v. Indiana (No. 1.), 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729, intimated that oil production could not be altogether prohibited. And in Village of Terrace Park et al. v. Errett (C.C.A.) 12 F.(2d) 240, certiorari denied 273 U.S. 710, 47 S.Ct. 100, 71 L.Ed. 852, the court pointed out the difference between an ordinance prohibiting the erection of a factory in a particular location and one prohibiting an owner from recovering the mineral content of his lands. But more lately it has been settled that, for the common good, drilling of oil wells can be prohibited in certain areas. Winkler et al. v. Anderson et al., 104 Kan. 1, 177 P. 521, 3 A.L.R. 268. Judge Lewis, speaking for the Eighth Circuit Court of Appeals, in Mars et al. v. City of Oxford et al., 32 F. (2d) 134, 67 A.L.R. 1336, held that drilling in a city might be prohibited. And in Marblehead Land Co. et al. v. City of Los Angeles (C.C.A.) 47 F.(2d) 528, certiorari denied 284 U.S. 634, 52 S.Ct. 18, 76 L. Ed. 540, it was held that an ordinance prohibiting drilling on an unimproved tract of 291 acres, 1100 feet from the nearest house, was valid.

■ The fire dangers attendant upon drilling is reflected in insurance rates; the damage done to shrubs and plants and grass is shown by the evidence; we have personal as well as judicial knowledge of the inconveniences from oil spray, noxious

gases, and the noise. The city has power to protect its citizens from such invasions.

■ Plaintiff does not dispute the validity of the zoning ordinance as originally drawn prohibiting drilling in the city. Its position is that as administered during the last two years, it has arbitrarily denied plaintiff the right to recover its oil and the equal protection of the laws. Under the doctrine of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, plaintiff's constitutional right is protected from arbitrary administration of a law fair on its face.

■ The claim is this: By successive ordinances the drilling zone has been extended so it now becomes arbitrary to enforce the once legal restrictions against plaintiff's property. This court cannot enact an ordinance establishing a U-7 zone over this tract. It has the power to enjoin the enforcement of the oil provisions of the zoning ordinance if they are illegal.

■ It is asserted that all ordinances amending the zoning ordinance since the 1934 charter amendment are invalid, because it submits a technical question to the electorate; that all such ordinances are invalid, too, because they do not comply with the statutory command for a comprehensive zoning plan in the public interest. But the validity of the amendatory ordinances is not in issue; if they are all invalid, the restrictions on plaintiff would remain. As a matter of fact, if these later ordinances are invalid as claimed, then no wells can legally be drilled north of about Third Street and plaintiff very certainly has no case. Plaintiff's prayer is that it be allowed to drill notwithstanding the restrictions against it. That comes down to the validity of the zoning ordinance.

■ Zoning requires lines to be drawn which never can be mathematically exact. On the U-2 side will be some dwellings as pretentious as on the U-1 side. Nevertheless there must be some rhyme or reason in establishing zones. An ordinance which checkerboarded the entire city, permitting drilling in the black squares only doubtless would be bad. And if the U-7 limits crept in from all sides until only a few blocks of the same character in the center were restricted, doubtless too that would be bad. On the other hand, zoning must look at sections of the city instead of separate tracts. If there is an unimproved block in the heart of a highly restricted residential suburb, the owner cannot require his vacant block to be separately zoned for industry because his block is less improved than one in the industrial section.

The law recognizes degrees; and I think Mr. Harn cannot insist on separate treatment of his 100 acres in a densely settled and highly restricted residence section, simply because he has not seen fit to improve it.

Is there some fair reason to permit drilling on all the east side except this one section? It seems to me there is. City planners take cognizance of the difference between the humble homes of the poor, representing a small investment, and the mansions of the wealthy. To be sure, the humble home is a castle and means as much to its owner as the rich man's mansion—sometimes more. But a recovery of $5,000 of oil from a city lot with a $2,000 house on it is economically justified; it is not if it ruins a $50,000 structure.

One cannot drive through the restricted section without immediately observing that it is a different character of development than that part of the east side zoned for oil. There are exceptions, of course, but as a whole the restricted section is much more highly improved, both in dwellings and in landscaping, than the unrestricted. I cannot believe a court can say to a city that it has no power to protect a high class residential section from the destruction of values that follows oil development. Mr. Harn has his rights; so, too, do the hundreds of his neighbors who have built homes in reliance on this ordinance.

There are other reasons. This restricted section voted substantially against extending the zones; its residents, as a whole, do not want to trade their homes for oil. The rest of the east side voted for the extension. Can the Council be said to be arbitrary when it follows the will of the majority of its constituents? The vote may change, of course, when it is known that oil is close anyway. But the fact remains that this district alone, of all the east side, wants to keep oil development out. Again, much of this section has restrictions in the plats or deeds. Oil probably could not be produced except by unanimous consent even if the zone were extended.

It is said that wells are going down in sections where the houses are closer together than here. It is true, but proves too much. That reasoning would compel

the city, if it zones one section in the bottoms for oil where all owners desired it, to zone Nichol's Hills where none desired it because the yards are bigger in Nichol's Hills.

It is said that the Harn tract is bounded on the west by the Santa Fe tracks and a block given over to business and on the north by a highway with filling stations, etc.; that, therefore, it is blighted as a residence section. Not so. The Santa Fe tracks did not blight Edgemere, a fine residence section a few blocks north. The Santa Fe tracks blighted but one block immediately west of the tract. Not more than 100 yards on the western edge of the Harn tract is blighted by the tracks for residence purposes.

It is said, and is true, that Mr. Harn's property is worth more for oil than for residences. Many lots in residence sections would be worth more for filling stations than for residences but zoning keeps them out. The whole theory of zoning is that the individual right must yield to the public interest. And the substantial homes of literally dozens of Mr. Harn's neighbors would be irretrievably ruined if this tract is drilled out; for if it is drilled out, the rest of the restricted section will undoubtedly be drilled where there are no contractual restrictions.

If wells are drilled on state property adjoining the Harn tract on the north and east a very different picture would be presented on which no opinion is now expressed. It cannot be assumed that the city will permit drilling there and prohibit it on the Harn tract; nor can it be assumed that the law will be defied, for this is a government of laws and not of men.

It is the city's duty to enforce its valid ordinances, by arrest if need be. I think the zoning ordinance is valid. I, therefore, cannot enjoin the city from enforcing a valid ordinance. Nor can I do it temporarily. If that order issues, a derrick will be started to-morrow. That involves many of the dangers and inconveniences prohibited by the ordinance. A derrick on Mr. Harn's south line will cost his neighbors thousands in increased fire insurance premiums. Further, if one starts, there will be twenty started in other parts of the restricted territory, for in the race for oil, time is of the essence.

The bill will be dismissed on its merits at plaintiff's costs.