## INDIAN TERRITORY ILLUMINATING OIL CO. et al. v. LARKINS et al.

No. 25236. Feb. 27, 1934.

Rehearing Denied April 17, 1934

Ames, Cochran, Ames & Monnet, Embry, Johnson, Crowe & Tolbert, R. H. Hudson, R. E. Boggess, R. B. F. Hummer, W. P. McGinnis, and R. M. Williams, for plaintiffs in error.

Willingham & Fariss, Stokes, Jarman & Brown, Hemry & Hemry, George F. Short, G. B. Fulton, and Bleakmore, Barry, Farmer & Lee, for defendants in error.

OSBORN, J. This is an appeal from a judgment of the district court of Oklahoma county reversing the action of the board of adjustment of Oklahoma City and ordering the building superintendent of Oklahoma City to issue to the applicant, R. Carl Larkins, one of the defendants in error, a permit to drill a well for oil and gas upon a tract of land in the U-7 drilling zone in Oklahoma City.

Larkins applied to the building superintendent of Oklahoma City for a permit to drill an oil and gas well on a tract of unplatted land consisting of .168 of an acre located in the U-7 drilling zone in Oklahoma City. The application was denied, and an appeal was taken to the board of adjustment of the city, and there denied. An appeal was then taken to the district court of Oklahoma county. The court rendered judgment on August 11, 1933, granting the permit to drill.

The tract of land in controversy is within the U-7 drilling zone, a part of a larger tract, the remainder of said tract having been attached to other tracts by the board of adjustment, and wells having been drilled

on all sides of the property herein involved, and all the property surrounding the parcel of land involved is participating in production. The owners of the tract involved made application to have said tract attached to adjoining drilling areas in order that said land might participate in the royalty from the drilling of wells in the adjacent drilling areas, but said right was denied by reason of objection of some of the plaintiffs in error herein. There is no attempt to show that the drilling of the well on the tract in controversy will constitute a serious fire hazard, or that the lives or property of citizens will be jeopardized by the drilling of such additional well, but it is shown that said vicinity has largely been given over to the production of oil and gas.

It has been called to the attention of the court that, while the city of Oklahoma City and J. W. Van Meter, building superintendent, gave notice of appeal from the judgment of the trial court authorizing the issuance of a drilling permit, they have withdrawn their notice and expressly waived their right to appeal from said judgment, and that thereafter, on the 10th day of October, 1933, the district court made a subsequent order directing the issuance of such drilling permit. It is shown by supplemental proceedings that said drilling permit was in fact issued, and that certain persons pursuant to authority from Larkins have gone upon said lands and drilled a well to a depth of more than 4,000 feet, said drilling being halted by an order of this court pending the determination of this cause. This appeal is prosecuted by plaintiffs in error, who are persons claiming to be affected by said order. It is earnestly contended that by reason of the abandonment of the appeal of the city of Oklahoma City and J. W. Van Meter, building superintendent, and by reason of the issuance of the permit to drill, this proceeding is moot and has no proper parties appearing as plaintiffs in error. Under the view we take of this case, we find it unnecessary to determine this question, but prefer to determine the same on the merits.

Considering the case on its merits as presented on appeal, we find that the only issue presented was whether or not, under the circumstances and conditions shown, Mr. Larkins was entitled to a drilling permit.

A property owner has a right to drill upon his property for the purpose of producing or taking therefrom whatever oil or gas he may find. Such a right passed from the owner of the land to Mr. Larkins through the executed oil and gas lease. In the exercise of his right, Mr. Larkins could locate his well on the leased premises wherever he chose. No private person could complain about the exercise of that right unless the complainant owned an interest in the particular land or lease. Imo Oil & Gas Co. v. Chas. E. Knox Oil Co., 120 Okla. 13, 250 P. 117. An oil and gas well is not a nuisance per se. The authority of the city officials to interfere with the right of Mr. Larkins was limited to the proper exercise of the police power of the city. That power operates when necessary to protect the health, morals, safety, and general welfare of the public. It is derived from the provisions of chapter 178, Session Laws 1923. It does not include the power to prevent waste of natural resources.

Section 6170, O. S. 1931, a part of the statute, is as follows:

"For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, and the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

City ordinance No. 3944, enacted pursuant to that statute, does not prohibit drilling. It requires the doing of a certain thing as a prerequisite to the exercise of the right to drill, to wit, the securing of a permit. The issuance of the permit to drill granted to Mr. Larkins no right which he did not have. It merely removed a restriction that had been imposed by ordinance upon the exercise of a right which he had. The question presented is whether or not the trial court was authorized to remove that restriction. We must look to the provisions of the statute, supra, and ordinance, supra, for the court was not authorized to make an order requiring the issuance of a permit in violation of the provisions of the ordinance and statute. Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. (2d) 1068.

The land on which Mr. Larkins asked for a permit to drill is less in area than the area required by one of the provisions of the city ordinance (section 1, paragraph D), which is as follows:

"In the unplatted tracts, no well shall be drilled or put down upon any block or tract of less than five acres in area, and in platted tracts, no such well shall be drilled or put down upon any block of less than two

and one-half arces in area, except as otherwise provided."

It is not sufficient in size to permit drilling without a violation of another provision thereof (section 7), which is as follows:

"No well for the production of, or mining for petroleum or natural gas, shall be drilled or put down nearer than 50 feet from the property line of the tract on which such well is situated."

The plaintiffs contend that since the ordinance did not provide for any exceptions, the district court on appeal had no greater authority than the board of adjustment, and that it was without jurisdiction to grant such a permit. Section 6176, O. S. 1931, which is a part of the statute, supra, in part, provides:

"Such local legislative body may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this act may provide that the said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. * * *"

The plaintiffs contend that that provision merely gives the local legislative body the authority, by ordinance, to provide for exceptions in appropriate cases, and that without provision for such exceptions in an ordinance neither the board of adjustment nor the district court has authority to make any exceptions to the requirements of the existing ordinance. That contention would have force if the language of the statute, supra, were not to the contrary. Section 6176, supra, further provides:

"* * * The board of adjustment shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this act or of any ordinance adopted pursuant thereto.

"(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

"(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

"In exercising the above mentioned powers such board may, in conformity with the provisions of this act, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken. * * *"

Those powers are not dependent upon their being stated in the zoning ordinance.

It is not required that the board of adjustment look to the provisions of any ordinance for authority to reverse or affirm, wholly or partly, or to modify any order, requirement, decision, or determination appealed from, or to make such order, requirement, decision, or determination as ought to be made. The statute confers "all of the powers of the officer from whom the appeal is taken." Such powers may be exercised in conformity with the provisions of the act. Since the board of adjustment has such authority by reason of the statute, the district court as a court of equity has the same authority on appeal.

Much stress is laid in the brief of plaintiffs in error that the tract of land in controversy is a small tract consisting of only .168 of an acre, and that a well drilled thereon will drain oil from an area greatly in excess of said acreage. We want to emphasize the fact, however, that the Legislature, in delegating to certain cities the power to restrict the drilling of wells within the boundaries thereof, was dealing with the police power in so far only as the health, morals, safety, and general welfare of the public might be injuriously affected by such drilling. The Legislature did not confer authority upon cities to prevent the commission of waste of natural resources or to prevent the inequitable taking of oil from a common source of supply. Such authority was delegated by other statutory provisions to another tribunal. The question of improper production and inequitable drainage of contiguous lands is not a determining factor in an application for a permit to drill under the terms of the statute and ordinance. Regard must be had only for the public interest in so far as it relates to the protection of the citizens under the authorized exercise of the police power.

The findings of the trial court are set forth in the judgment appealed from. The court found:

"The court further finds that the property is within the U-7 drilling zone of the city of Oklahoma City and that wells have been drilled on all sides of the property

herein involved and that all of the property surrounding the parcel of land herein involved is participating in the production of surrounding wells; that the owners of the parcel of land herein involved have duly and diligently made application to have the parcel of land herein involved attached to adjoining drilling areas in order that said parcel of land might participate in the royalties from the drilling of the wells on the adjacent drilling areas, but that the owners of said property have been denied the right to participate in said production by the board of adjustment of Oklahoma City and by this court on appeal from the board of adjustment of Oklahoma City. * * *

"The court further finds that the literal enforcement of the provisions of the ordinance wi l result in unnecessary hardship, that, by granting the permit contrary to the provisions of the ordinance, the spirit of the ordinance will still be observed, and that by such granting substantial justice will be accomplished, and that the granting of such permit is not contrary to the· public interest."

In do'ng so it acted within its authority and jurisdiction, as stated in Anderson-Kerr, Inc., v. Van Meter et al., supra. The facts found constitute a valid basis for the application of the exception made to the provisions of the ordinance. The questions for determination were questions of fact, and since the findings of the trial court are amply sustained by the evidence under the law, they will not be disturbed by this court.

The judgment of the trial court is in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and BAYLESS, JJ., concur. ANDREWS, J., not participating. McNEILL, BUSBY, and WELCH, JJ., dissent.

McNEILL, J. (dissenting). I am unable to concur with the result which has been arrived at by the majority opinion. It is my opinion that the facts in this case do not justify a permit to drill for oil and gas on the tract of land in question, being unplatted land, consisting of .168 of an acre, approximately 50 feet wide and 146.6 feet long, located within the U-7 drilling zone in Oklahoma City. This is not the usual case where a property owner may exercise the right to drill upon his property for the purpose of extracting oil and gas therefrom, nor is it a question of determining whether or not, in the abstract, the drilling of an oil and gas well constitutes a nuisance, or whether the same rule is applicable when considered in connection with the drilling of an oil and gas well within a zoning drilling area, in a proven highly productive oil and gas field in Oklahoma City, where wells at times have been known to run wild to the terror of near-by residents and property owners in said city.

In my opinion the search for oil and gas in a large city must yield and be amenable to the rights of others. The real question in this case is whether or not the zoning ordinance can be disregarded in the manner authorized by the majority opinion so as to permit the property owners of such a small tract of land to drill an oil and gas well thereon. It is asserted that there are producing wells on every side of this tract of land which is being drained for oil and gas purposes. This court has heretofore considered the zoning ordinance in question in the case of Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. (2d) 1068. , In that case the tract of land consisted of a fractional 63/100 of an acre, and it was shown by the record that a well on the tract of land involved in that case would drain approximately eight acres and that 90 per cent. of the drainage would belong to others than the owner of the tract of land involved in that case.

In the instant case it appears undisputed that a well on the proposed tract involved in this case would drain the oil and gas from approximately five acres, and that 97 per cent. of this oil would come from adjoining property. It was estimated that the oil recoverable under this tract of land 50 feet wide and about 146.5 feet long would amount to 28,000 barrels, and the cost of drilling a well on this property would be approximately $100,000, to a depth of about 6,500 feet. When the general posted price of oil for 40 gravity oil is figured at 62 cents, it is apparent that the lessee and owners of this minute tract are not very much concerned in extracting the estimated maximum three per cent. of the recoverable oil which would actually come from under their premises, but are relying upon the 97 per cent. of recoverable oil which will drain into this well from the property of others. The very face of such a condition is not wholesome.

The district court made certain findings which, in substance, were that wells have been drilled on all sides of the property; that all the property surrounding the parcel of land involved herein is participating in the production of the surrounding wells; that the owners of the parcel of land involved have duly and diligently made application to have the land involved attached to the adjoining drilling areas; that

the owners have been denied by the board of adjustment the right to participate in the oil and gas produced; that unless a permit is granted to drill upon the property involved herein, all of the oil lying therein and thereunder will eventually be drained from under the property by wells which are being drilled on surrounding tracts; that to drill on the tract involved, it would be necessary to locate the well less than 50 feet from the side line of said land; that the literal enforcement of the provisions of the zoning ordinance of the city would result in unnecessary hardship; that if a permit were granted contrary to the provisions of the ordinance, the spirit of the ordinance would still be observed, and that by such granting substantial justice would be accomplished and the granting of such permit would not be contrary to public interest.

The assignments of error which were presented, in part, are as follows:

"7. The court was without jurisdiction to enter an order granting a permit to the applicant."

"9. The court's finding 'that the literal enforcement of the provisions of the ordinance will result in unnecessary hardship, that by granting the permit contrary to the provisions of the ordinance, the spirit of the ordinance will still be observed, and that by such granting substantial justice will be accomplished, and that the granting of such permit is not contrary to the public interest,' is not sustained by sufficient evidence, and is against the clear weight of the evidence.

"10. The granting of the permit under the facts shown by the record in this case is contrary to public interest, and contrary to the spirit of the zoning ordinances and the drilling ordinances of the city of Oklahoma City, and the granting of such permit is not necessary in order that substantial justice may be done, and for those reasons the court erred in the judgment rendered."

"12. The property involved in the application is a part of a tract of more than five acres, and, under the terms of the ordinances of Oklahoma City, the board of adjustment, or the district court on appeal from the order of the board of adjustment, had no jurisdiction or authority to attach portions of such tract to the drilling blocks, thereby reducing the acreage in that portion of the tract remaining unattached to less than five acres. The undisputed evidence shows that the owners of the property described in the application requested and urged the attachment of portions of a tract of more than five acres to adjoining drilling blocks, although the same could not have been attached over their protest, and, by their own actions, the tract has been reduced until the small tract involved in the present case is all of the right of way property which has not been attached to some drilling block. For those reasons the court erred in granting the permit to applicant."

This property comes within the zoning area of said city and the zoning ordinance prohibits the drilling an oil and gas well on less than five acres on unplatted land, and section 7 of ordinance 3944, provides:

"No well for the production of, or mining for petroleum or natural gas shall be drilled or put down nearer than 50 feet from the property line of the tract on which such well is situated."

This section of the ordinance is violated by the granting of a permit to drill an oil and gas well on the land in question.

In the Anderson-Kerr Case, the location which was sought to be proposed for the drilling of an oil and gas well was within nondrilling territory, fixed by section 2 of ordinance 4090, which prohibited the drilling of a well upon any property within 300 feet of the boundary line of U-7 zone.

It appears that R. Carl Larkins, the owner of an oil and gas lease on the small tract of land in question, which he had received by assignment from W. B. Skirvin on December 13, 1932, made application to the building superintendent of Oklahoma City, in February 1933, for a permit to drill an oil and gas well on this tract of land. This application was denied and an appeal was taken to the board of adjustment of Oklahoma City. After a hearing the board of adjustment denied this appeal on March 27, 1933. Thereafter an appeal was taken to the district court of Oklahoma county. On August 27, 1933, the district court entered its judgment reversing the board of adjustment and granted said Larkins a permit to drill for oil and gas.

It also appears that this strip of land is a portion of the south half of the Chicago, Rock Island & Pacific Railway right of way, which right of way extends through the southeast quarter of section 34, township 12 north, range 3 west, and is a strip 100 feet wide. The right of way strip comprises more than five acres of ground. The tract in question is bounded on the north by the center main track of the Rock Island, and the south line of the property is the south right of way line of the Rock Island, there being two tracks on said right of way strip. The west boundary line of the tract is an extension due south of the east line of Laird avenue, and the east boundary of the tract is 660.4 feet west of the east line of

section 34. The owners of the tract in question executed an oil and gas lease on the same to W. B. Skirvin on September 3, 1931, and that lease included block 18 in Phillips and Mead's East Side addition to Oklahoma City, and that portion of the right of way of the Chicago, Rock Island & Pacific Railway Company, 100 feet in width, lying between or extending south of the west line of Laird avenue to the east line of the southeast quarter of section 34. It will be observed that this lease not only covered the tract in question, but that portion of the right of way on Laird avenue extending south immediately adjacent to the west of the tract in question; that portion of Laird avenue extended south being a tract 60 feet by 100 feet; thereafter, on October 5, 1931, W. B. Skirvin and B. V. Whitefield made application to the building superintendent for a permit to drill on said lease, the well to be located on block 19 in Phillips and Mead's East Side addition. This drilling block area for said permit included the tract in question.

It appears that the board of adjustment granted said lessees a permit to drill all of said blocks 18 and 19 and the north 50 feet of the right of way of the Chicago, Rock Island & Pacific Railway Company from the center line of Kelly avenue produced south to the east line of section 34, adjoining said block 19 on the south, and a portion of the right of way of the Missouri, Kansas & Texas Railroad Company lying north of the right of way of the Chicago, Rock Island & Pacific Railway, which property did not include the land in question. Thereafter an appeal was taken to the district court of Oklahoma county and the district court affirmed the order of the board of adjustment for permit to drill an oil and gas well with certain modifications.

The district court detached the triangular portion of the right of way of the Missouri, Kansas & Texas Railroad Company, consisting of approximately .27 of an acre, and added to the acreage covered by the permit granted by the board of adjustment the north 50 feet of the right of way of the Chicago, Rock Island & Pacific Railway Company from the center line of the Kelly avenue produced south, extending easterly to the east line of Laird avenue produced south. It will be observed that the instant tract was not included in the drilling permit by the judgment of the district court, though it was adjacent to the land covered by said permit. It is also noticeable that the land detached by the district court was the said Missouri, Kansas & Texas Railroad

Company tract and the south 50 feet of the Chicago, Rock Island & Pacific Railway Company right of way covered by the Skirvin lease.

It also appears that the district court, in its journal entry of judgment entered on January 22, 1932, recites that the order of the board of adjustment heretofore made "be and the same is hereby modified to include block 18, Phillips & Mead's East Side addition in the drilling area as set forth therein for all purposes under the terms and conditions of the stipulation entered into between the interested parties as evidenced by certain contracts introduced in evidence in this court, being the owners and holders of the lease upon the property within the drilling area, as fixed herein." It thus appears that the district court modified the order of the board of adjustment and did not include the tract of land in question which was in accordance with the stipulation of the owners of the Skirvin lease. There is nothing in the record to indicate why the district court should not have included this small tract of land in the Skirvin application to drill. No appeal was taken from the judgment of the district court rendered January 22, 1932, by any of the parties. In fact, it appears proper to conclude that it must have been the stipulation entered into between said owners and said lessees of the Skirvin lease which prompted the district court to enter said judgment modifying the order of the board of adjustment and thereby eliminating the small tract in question from the area which the owners had sought to have included in their drilling area for a permit.

It also appears that on March 16, 1931, the board of adjustment attached to the Watchorn drilling permit area the south half of the right of way strip which was contiguous to the Watchorn lease, being a strip 50 feet wide by 661.8 feet long, which included the instant tract. This case was appealed to the district court, and on May 11, 1931, this right of way strip, which includes the instant tract, was eliminated from the Watchorn drilling permit area. Before this strip was eliminated from the Watchorn drilling permit area, the board of adjustment, on March 27, 1931, attached the south half of the east 660 feet of the right of way strip of the Chicago, Rock Island & Pacific Railway Company, which lies adjacent to and east of the tract of land which we are considering, to the I. T. I. O. and Phillips drilling permit area.

Defendants in error, in their brief state: "On that date, to wit, March 27, 1931, the

board of adjustment had disposed of the south 1/2 of the east 1,321.8 feet of the right of way strip" (which would include the instant tract) "but when on May 11, 1931, the district court detached the above-described portion from the 'Watchorn area,' the corner stone of the present case was laid." It also appears that, after the instant tract was eliminated from the Watchorn permit, thereafter, on November 11, 1931, another permit area was created known as the Diffie drilling permit area, by order of the district court. After these drilling areas had been defined, there then existed unattached to any drilling area the tract of land in question. It will be observed that the owners of the tract in question joined in the lease of Skirvin which was executed September 3, 1931, which lease covered this unattached portion and also block 19, Phillips and Mead's East Side addition.

It will also be observed that when the Diffie application was made, the owners of the right of way, including the property involved herein, made application to have only the portion of right of way property attached to the Diffie block which was west of the east line of the Laird avenue extending and adjoining the tract on west, and did not seek to have the property in question attached to that block. The board of adjustment considered the Diffie application in July, 1931, but the district court made its order in reference to the Diffie block on November 20, 1931. While the Diffie application was pending, which was prior to the detachment of the property from the Skirvin drilling area as defined by the district court on January 22, 1932, the owners of the property in controversy had executed the Skirvin Lease on, to wit, September 3, 1931. It is apparent that the owners of the property in question had sought to divide their property so as to place this particular tract in the Skirvin lease, and that they desired the same to be excluded from Diffie permit area, although the Diffie area is contiguous to the instant tract.

Larkins, at the time he received his lease on the tract in question, December 13, 1932, from Skirvin, was chargeable with all the facts surrounding the drilling areas which had been authorized. Under such circumstances, it is my view that the granting of the permit in the instant case is manifestly contrary to the provisions of the zoning ordinance, and that the very intent, object, ultimate purpose, and spirit of the ordinance is overlooked. To grant a permit to drill an oil and gas well on the instant tract of land, which would drain, under the

evidence, oil from an area of approximately five acres and receive 97 per cent. of the oil recoverable from adjoining property, would destroy the effect and limitation of the ordinance. The cost of drilling a well on this property will be approximate $100,000. If substantial justice permits the drilling of such a well, it appears to me that it would be difficult to say why offset wells should not likewise be drilled to the proposed well, all in violation of the provisions of the zoning ordinance. If such results, the intent and the purpose of the zoning ordinance becomes nullified and ignored, and in the language of the Supreme Court of Massachusetts, in the case of Prusik v. Board of Appeals; 160 N. E. 312, "there would be little left of a zoning law in respect to the rights of neighbors or of the public."

The owners of the property in question should not be denied the right to such equitable relief, if they can establish that they have endeavored to come within the intent, purpose, and the provisions of the zoning ordinance in good faith, and that a set of circumstances has prevailed through no fault or want of diligence on their part whereby they are unable to share in the production of oil or gas which may be coming from beneath their property. It occurs to me that such a question would be very proper for the consideration of a court of equity, and that substantial justice could be fully and adequately administered in that forum rather than attempting, as the majority opinion does, in my opinion, to grant the permit and thereby nullify the zoning ordinance. A court of equity is not powerless to render relief.

Stability to zoning ordinances should be given consideration and their provisions should be relaxed sparingly, and then only under plainly justifiable conditions. See Prusik v. Board of Appeals (Mass.) 160 N. E. 312.

It is my conclusion that the record does not justify an additional well to be drilled on this isolated tract, being less than the acreage required by the zoning ordinance and in further violation of the 50 foot provision for the location of a well and the real intent and purpose of the ordinance. I see no substantial justice in granting the permit. It clearly opens the door so that technical questions can override the plain provisions of a zoning ordinance enacted to protect the property, lives, and general well-being of those citizens residing within the municipality. When more oil and gas wells are drilled within the drilling areas, the hazards are unquestionably highly intensified and increased. The intent of the or-

dinance should be rigidly upheld, otherwise it has no force or meaning.

For these reasons, I dissent.

I am authorized to announce that Justice WELCH concurs.