## STATE ex rel. TOWN OF EL DORADO v. WILLIAMSON, Atty. Gen.

No. 27142. June 16, 1936.

Rehearing Denied Sept. 29, 1936.

J. Berry King and George J. Fagin, for relator.

Mac Q. Williamson, Atty. Gen., and Stephen D. Holloway, for respondent.

GIBSON, J. This is an original action wherein the town of El Dorado seeks a writ of mandamus directed to Mac Q. Williamson, Attorney General, and ex-officio Bond Commissioner, requiring his approval of certain refunding bonds issued by said town.

The bonds were issued pursuant to authority granted, or allegedly granted, by article 6, ch. 32, Session Laws 1935, the material portion of which is as follows:

"Any county, city, town, township, board of education, school district, or any other municipal corporation in this state, whether operating under the provision of a special charter or otherwise, is hereby authorized and empowered to issue its bonds for the purpose of refunding bonded and/or coupon indebtedness, outstanding for more than two years, and to issue new bonds with one or more annual or semi-annual interest coupons attached, representing the rate of interest agreed upon, in payment for any amount of outstanding bonded and coupon indebtedness; which bonds may be exchanged pursuant to agreement with the holders of such indebtedness, or sold for not less than their par value, in the manner now or hereafter provided by law for the sale of other bonds of such municipalities, or any of them, and the proceeds of said sale applied to the redemption of the bonds to be refunded. If said bonds are offered for sale, and no legally accepted bids are received at said sale, the county, city, town, township, board of education, school district or other municipal corporation issuing such refunding bonds, in its discretion,

may either again offer such bonds for sale, or may exchange such refunding bonds, on a par for par basis, for the bonds, and interest, to be refunded; provided, however, if an agreement has been made for the exchange of such bonds the same shall be exchanged, as herein provided, without first having been offered for sale. Whether such refunding bonds are sold or exchanged, they shall be delivered only upon simultaneous surrender, payment and cancellation of a like amount of the bonds to be refunded, inclusive of the interest accrued thereon. * * * "

The statute further prescribes the procedure to be observed by the governing authority of the municipality in the issuance of such bonds, and requires the Attorney General's approval of the issue.

It appears that the relator has fully complied with the statutory requirements in the issuance of the bonds. The respondent, however, withholds his approval for the reason that the issue was predicated upon an alleged void agreement between the relator and the county treasurer of Jackson county wherein the treasurer, with certain individuals joining therein, agreed to accept the refunding bonds in exchange for the bonds held by them and sought to be funded. A portion of the old bonds was held by the treasurer as an investment in the county sinking fund. It is contended that the agreement is void in that the treasurer is unauthorized to exchange or deal in such securities, and that the void contract renders the bond issue void.

The relator takes the opposite view, maintaining that the treasurer's agreement is valid and binding and that the bonds should therefore be approved. The issues in the case are therefore centered upon the question of the validity of the treasurer's contract to exchange the old bonds for the new.

The parties thus assume the position that the bond issue is predicated upon the exchange agreement; that such agreement forms the statutory foundation upon which rests the final ordinance or resolution of the municipal governing board authorizing the issuance of the bonds. This is in accord with our interpretation of the statute.

The Attorney General has interpreted the act as providing two methods of refunding outstanding bonded indebtedness, namely: (1) By agreement and exchange with creditors, and (2) sale of the new bonds and payment of the old. We agree with this interpretation, and hold that the ordinance or resolution of the governing body of the municipality authorizing the issuance of the bonds, as provided in section 2 of the act, must be accomplished in contemplation of an existing valid agreement of exchange or of a bona fide cash bid. The Attorney General, pursuant to his authority as Bond Commissioner granted by sections 5412 and 5413, O. S. 1931, may legally require the inclusion of a valid agreement of exchange as a portion of the necessary procedure leading up to the bond issue. Where the issue is predicated upon an exchange agreement, he may refuse to approve the bonds if that agreement is invalid. His duties in such case are not confined to the mere determination of whether the forms of procedure have been observed by the municipal officers, but he may, in the exercise of his authority as Bond Commissioner, examine into the legality of all matters surrounding the issuance and proposed disposition of the refunding bonds. See Board of Education v. Short, 89 Okla. 2, 213 P. 857.

Respondent says that the agreement, if carried out on the part of the county treasurer of Jackson county, would amount to an exchange of securities held as county sinking fund investments for other securities, and that such exchange is unauthorized and void. National Surety Co. v. State, 111 Okla. 180, 239 P. 257; State v. McCurdy, 115 Okla. 111, 241 P. 816.

The foregoing decisions express the rule that a county treasurer may not exchange sinking fund securities for other securities. In the National Surety Company Case we said:

" * * * There is no syllable of authority given to sell or exchange such securities as may be purchased. Accepting payment of the securities purchased is in no sense a sale of the securities. All the implied power given the officer is to accept payment of the securities. * * * "

It is further held there that the county treasurer's authority in such case is limited to the original investment. In other words, when the sinking fund is once invested, the treasurer may not thereafter deal with the security so acquired except to proceed to collect the debt when the same matures. The decision in the McCurdy Case is to the same effect relative to the question of exchange of sinking fund securities.

The foregoing decisions clearly define the treasurer's authority under the sinking fund investment statutes, section 5914, Okla. Stats. 1931, amended by Laws 1935, c. 32, art. 2, and section 5915, O. S. 1931, and limit that

authority to the investment of the cash fund in securities there designated and the collection of the debt represented by such securities. If we are to sustain the treasurer's agreement in the instant case, and at the same time confine ourselves within the rule expressed in those decisions, we must see in that agreement not one for the exchange of sinking fund securities for other securities, but it must be seen as a mere preliminary step looking toward the collection of the debt, thus bringing the act of the treasurer within the range of the implied powers conferred upon him by the statutes.

The relator seeks to uphold the treasurer's agreement upon the theory that such agreement falls within the implied powers of the officer. It is said in this connection that the treasurer occupies a position in the nature of a trustee under an express trust and that he is under an implied obligation to conserve the assets of the sinking fund for the joint and several benefit of the settlor, the county whose obligations are to be paid therefrom, and for the beneficiaries, the owners and holders of the obligations. It is here urged that among the implied powers conferred upon the treasurer as such trustee is the authority to assent to a refund of the delinquent obligations of his debtor. In support thereof the relator relies upon the decision in City of Wilburton v. King, Attorney General, 162 Okla. 32, 18 P. (2d) 1075. In that case a municipal treasurer held certain warrants of his own municipality as investments in the sinking fund. He brought suit against the municipality and reduced the warrants to judgment. The judgment was refunded by the municipality by a district court proceeding, and bonds issued. The Attorney General refused to approve the bonds on the theory that the treasurer was without authority to sue his own city and, further, that the entire proceeding amounted to an exchange of securities. Whether the treasurer proposed to accept the refunding bonds in payment of the judgment or whether the bonds were being sold by the city to obtain funds to retire the debt is not disclosed by the opinion, but it is apparent that the exchange of securities referred to had reference to the exchange of the warrants for the judgment.

The court there held, however, that the suit to convert the warrants into judgment was within the treasurer's implied powers as being a step in the collection of the debt. The municipality's right to refund the judgment was recognized and the At-

the bonds. In speaking of the treasurer's torney General held duty bound to approve duty, the court in the opinion said:

"In the filing of a suit to convert the warrants held by him into cash, he was merely seeking to carry out an obligation imposed upon him by law."

And further on we find the following statement by the court:

" * * * The Attorney General has cited a number of cases dealing with the authority of the treasurer to sell or exchange securities purchased with the sinking fund moneys. However, the question here is not with reference to the exchange or sale of securities, but the right to maintain an action to force collection of such securities."

The foregoing statements by the court clearly reveal that the treasurer in that case was seeking to convert the delinquent securities into cash by the usual method: judgment and payment thereof in three annual installments by taxation. It is reasonably clear that he did not propose to accept for such judgment other securities in the form of refunding bonds. He was held authorized to obtain judgment and collect the cash thereon in the usual manner as authorized by law in cases involving the ordinary judgment creditor of a municipality. The city thereafter saw fit to refund the obligation and pay cash in discharge thereof instead of the levy of taxes for payment of the same in three annual installments. The decision is therefore well within the rule expressed in the National Surety Company and McCurdy Cases, supra.

Here the county treasurer of Jackson county proposes by his agreement to accept his debtor's refunding bonds in exchange for bonds held in the sinking fund of the county. This act is in no respect analogous to the action of the treasurer in the Wilburton Case. Here the treasurer is not seeking to collect the debt in any manner authorized by law, but offers to postpone the collection by accepting securities maturing at a later date. No statute authorizes the act, and there is yet no decision of this court recognizing the same as being within his implied powers. His only recognized implied power is to accept payment of the debt or to commence action to convert the same to judgment and to accept cash in immediate payment or to accept cash therefor in three annual installments. We feel that to recognize any extended authority would amount to undue judicial enlargement of the powers conferred by the Legislature upon the treasurer.

We hold, therefore, that the agreement here under consideration falls wholly without the express or implied powers granted the county treasurer by statute, and that the same is void, and that the Attorney General is justified in withholding his approval of the bonds in question.

The writ is therefore denied.

OSBORN, V. C. J., and RILEY, BUSBY, WELCH, PHELPS, and CORN, JJ., concur. McNEILL, C. J., and BAYLESS, J., absent.