**FEDERAL DEPOSIT INS. CORPORATION**
**v. CASADY, Town Treasurer, et al.**
**No. 1833.**

Circuit Court of Appeals, Tenth Circuit.

Sept. 25, 1939.

786

M. W. McKenzie, of Oklahoma City, Okl. (Francis C. Brown, of Washington, D. C., and Everest, McKenzie & Gibbens, of Oklahoma City, Okl., on the brief), for appellant.

W. C. Austin, of Altus, Okl. (F. R. Blosser, of Cheyenne, Okl., and Robert B. Harbison, of Altus, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The First State Bank of Cheyenne, Oklahoma, having become insolvent on March 25, 1935, it was closed and taken over by the Bank Commissioner of said state for liquidation. Deposits in said bank were insured by the Federal Deposit Insurance Company as limited by Section 12B (a), (y), of Act of June 16, 1933, § 8, 48 Stat. 168, 179, as amended by Act of June 16, 1934, § 1, 48 Stat. 969, 12 U.S.C. A. § 264.

John C. Casady, as treasurer of the town of Cheyenne, carried five separate and distinct deposits in said bank, at all times designated and appearing on its books as separate deposits, and in each at time said bank failed the balances therein were respectively as follows:

City of Cheyenne Sinking Fund $11,752.04
City of Cheyenne Paving Fund 1,801.06
Firemen's Pension Fund 462.68
City of Cheyenne Meter Fund 131.00
Cheyenne General Fund 156.43

Said treasurer and other appropriate and necessary parties instituted this action in the district court of Roger Mills County, Oklahoma, against the bank and the Insurance Corporation and other parties defendant to recover the sum of $5,000 on the sinking fund deposit liability and the full amount of each of the other four deposits.

The case was duly removed by the Insurance Corporation to the United States Court for the Western District of Oklahoma, the court ruling that it had thereby acquired jurisdiction. Judgment having been rendered in favor of the plaintiffs, the Insurance Corporation appealed.[1]

Section 12B subsection (l) of the Federal Reserve Act of June 16, 1933, 48 Stat. 168, as amended by the Act of June 16, 1934, among other things provides as follows:

"For the purposes of this subsection, the term 'insured deposit liability' shall mean with respect to the owner of any claim arising out of a deposit liability of such closed bank the following percentages of the net amount due to such owner by such closed bank on account of deposit liabilities. * * *

"That, in determining the amount due to such owner for the purpose of fixing such percentage, there shall be added together all net amounts due to such owner in the same capacity or the same right, on account of deposits, regardless of whether such deposits be maintained in his name or in the names of others for his benefit."

Sinking Funds.—Sections 26, 27, and 28, Article 10, Const. of Okla., Okl.St. Ann., impose certain limitations on bonded indebtedness, providing that a city, town, school district or county incurring any indebtedness requiring the assent of the voters thereof shall before or at the time of so doing provide for the levy and collection of an annual tax sufficient to pay interest on such indebtedness as it becomes due and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the date of such contracting of the same.[2]

A city or town holds the legal title to the sinking fund in trust for the bondholders and judgment creditors. St. Louis-San Francisco R. R. Co. v. Blake, 10 Cir., 36 F.2d 652; Hidalgo County Road Dist. No. 1 v. Morey, 5 Cir., 74 F.2d 101; Anthony v. State, 49 Kan. 246, 30 P.

1 Casady v. First State Bank, 24 F. Supp. 687.

2 Section 28, Article 10, Okla.Const., is as follows: "Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such

parts of judgments as such municipality may, by law, be required to pay."

Hampton, County Treas. v. Hamilton Const. Co., 173 Okl. 282, 48 P.2d 273; City of Shawnee v. Tecumseh, 52 Okl. 509, 150 P. 890; State ex rel. Hatfield, v. Moreland, 152 Okl. 37, 3 P.2d 803, 805, qualified; Kansas City, Southern R. Co. v. Excise Board of Leflore County, 168 Okl. 408, 33 P.2d 493.

488; 44 C.J. p. 1233, Sections 4215, 4216, 4217.

That each deposit represented a fund created for a separate purpose and was so carried on the books of the bank is not controverted. Provision for separation of funds raised by taxation levies in Oklahoma is fundamentally required.[3]

Sections 16 and 19, Article 10, Okla.Const., Okl.St.Ann., mandatory and prohibitory in language, are self-executing. Ex parte McNaught, 23 Okl. 285, 100 P. 27, and cases therein cited.

A separate fundamental right and capacity in which the fund must be held cannot be displaced either by legislative or administrative act. Bank of Picher v. Morris, 157 Okl. 122, 11 P.2d 178; Allen v. Board of County Commissioners, 131 Okl. 41, 267 P. 860; State v. Moreland, supra; Protest of Reid, 160 Okl. 3, 15 P.2d 995.

National Surety Co. v. State, ex rel. Richards, 111 Okl. 185, 239 P. 262, and Shull v. Town of Avant, 159 Okl. 271, 15 P.2d 49, cited with reliance on part of appellant, the former involving an action on a county treasurer's bond for a breach of duty as custodian of certain municipal and township bonds, and the latter as to priorities in case of insolvency of a bank, have no application in the instant case.

Further, Dillard v. Sappington, 151 Okl. 47, 1 P.2d 748; Dempsey Oil & Gas Co. v. Citizens' National Bank, 110 Okl. 39, 235 P. 1140; State ex rel. Barnett v. Exchange Nat. Bank, 172 Okl. 361, 45 P.2d 759, also cited by appellant, have neither controlling nor persuasive application to the questions here involved as to the right or capacity in which the town treasurer held these several funds in said separate accounts.

Each of such deposits created for a separate and distinct purpose, and each carried in the bank as separate from the others, was held in a separate right and capacity.

Statutory provision has been made for investment of sinking funds.[4]

Sinking funds must go into the ultimate payment and liquidation of the bonds and judgments, and not be otherwise used.[5]

General fund warrants are payable out of the general fund and the Treasurer as such may even maintain a suit thereon

---

[3] "Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose." Section 19, Art. 10, Okla.Const.

"All laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose." Sec. 16, Art. 10, Okla. Const.

[4] "The Treasurer having charge of any sinking fund of the State, or of any county, city, town, township, school district or any other municipality thereof, may invest such sinking fund in United States Bonds, the bonds or warrants of the State of any county, city, town, township, school district, or any other municipality thereof, or in any public building warrants maturing prior to the date of the bonded indebtedness and for the payment of which any such sinking fund is created. None of such securities as herein enumerated shall be purchased for more than par and accrued interest, provided, that before any such investment shall be made by the treasurer of any county or city such investment shall first be approved by an order of the County Commissioners and County Attorney at a regular session of said Board where such investment is proposed to be made by the County Treasurer, and by the City Council or other legislative branch of the city where such investment is proposed to be made by the City Treasurer; or the proper officers may buy and cancel the outstanding bonds of the State, county, city, town, township, school district, or other municipalities which they represent, whenever the same may be purchased at or below par and accrued interest; provided, that the treasurer of any city, county, town or school district may buy its bonds for cancellation at a price of not to exceed five (5%) per cent above par when authorized so to do by the governing body of such municipality and when such purchase shall have been approved by the district court of the county at a public hearing notice of which shall be published as the court shall direct." 62 Okl.St. Ann. § 541.

[5] State ex rel. Town of El Dorado v. Williamson, 177 Okl. 526, 60 P.2d 1032; State ex rel. Town of Nichols Hills v. Williamson, 177 Okl. 529, 60 P.2d 1036; Board of Education of City of Shawnee v. American Nat. Co., 135 Okl. 253, 275 P. 285.

against his own town for the purpose of bringing the funds back into the sinking fund by way of replenishment.[6]

Paving Funds.—The legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation. Section 7, Art. 10, Const. of Okla., Okl.St.Ann.

■ Such assessments and interest thereon, whether collected by the city or town clerk or county treasurer, are to be paid to the city or town treasurer who must keep the same in a separate special fund, not derived from general taxes,[7] and in no sense a fund of the city or town, for the purpose of paying the paving bonds and interest coupons thereon, and after the payment of all bonds and interest thereon, any surplus remaining in said fund shall be used for the purpose of repairing and maintaining any improvement for which such assessments have been levied, and for no other purpose whatsoever.[8]

■ The relation between the town or city through its officers and the bondholder thus created is that of an express trust created by law in which the city is the trustee and the bondholder the cestui que trustent. Straughn v. Berry et al., 179 Okl. 364, 65 P. 2d 1203; Beggs v. Kelly, 110 Okl. 274, 238 P. 466; State ex rel. Southern Surety Co. v. Armstrong, 158 Okl. 290, 13 P.2d 198;

[6] City of Wilburton v. King, Atty. Gen., 162 Okl. 32, 18 P.2d 1075.

[7] Riley v. Carrico, 27 Okl. 33, 110 P. 738.

[8] "The assessments provided for and levied under the provisions of this Act shall be payable as the several installments become due, together with the interest thereon, to the clerk of such city or town, who shall give proper receipts for such payments, and credit the same upon the street assessment record. The city or town clerk shall be required to execute a good and sufficient bond, with sureties, and in an amount to be approved by the governing body, payable to the city or town, conditioned for the faithful performance of the duties enjoined upon him by this Act as collector of said assessments. *It shall be the duty of the city or town clerk to keep an accurate account of all such collections made by him, and to pay to the city or town treasurer daily the amounts of such assessments collected by him, and the amounts so collected and paid to the city or town treasurer shall constitute a separate, special fund to be used and applied to the payment of such bonds and the interest thereon, as herein provided.* It shall be the duty of the city or town clerk, not less than thirty (30) days and not more than forty (40) days before the maturity of any installment of such assessments, to publish in two (2) successive issues of a daily newspaper, or in one (1) issue of a weekly newspaper, published in the county and of general circulation in said city or town, a notice advising the owner of the land affected by such assessment of the date when such installment and interest will be due, and designating the street, streets, or other public places for the improvement of which such assessments have been levied, and that unless the same shall be promptly paid said installment and interest shall bear interest at the rate of twelve per cent (12%) per annum thereafter until paid, and proceedings taken according to law to collect said installment and interest; and it shall be the duty of the city or town clerk, promptly after the date of maturity of any such installment and interest and on or before the fifteenth day of September in each year, to certify said installment and interest then due to the county treasurer of the county in which the city or town is located, *which installment and interest shall be by said county treasurer placed upon the November delinquent tax list of the same year prepared by the treasurer of said county, and collected as other delinquent taxes are collected. It shall be the duty of the county treasurer to collect such installments of assessment, together with interest and penalty, so certified to him by the city or town clerk, as herein provided, but any taxpayer shall have the right to pay his ad valorem taxes to the county treasurer regardless of the delinquency of such assessments; and within thirty (30) days from the receipt of such delinquent assessments, interest and penalty, so collected by the said county treasurer the same shall be paid by the said county treasurer to the city or town treasurer for disbursement in accordance with the provisions of this Act, provided,* that failure of the city or town clerk to publish notice of the maturing of any installment and interest shall in no wise affect the validity of the proceedings to collect the same under the provisions of this section. All payments to the city or town treasurer on account of such assessments shall be by him certified to the city or town clerk to be credited on the Street Assessment Record." (Italics supplied.) Section 6239, O.S.1931, as amended, 11 Okl.St.Ann. § 106.

Moroney v. State, 168 Okl. 69, 31 P.2d 926; Moore v. City of Nampa, 9 Cir., 18 F.2d 860; Brown-Crummer Inv. Co. v. Paulter, 10 Cir., 70 F.2d 184; Mcyers v. City of Idaho Falls, 52 Idaho 81, 11 P.2d 626.

Such assessments shall be payable in ten (10) equal installments and "be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, * * *."[9]

Section 6237, O.S.1931, 11 Okl.St.Ann. § 151, covers[10] the issuance of improvement bonds, requisites and provisions—registration and payment, and stipulates that said

---

[9] "Assessments in conformity to the appraisement and apportionment as corrected and confirmed by the governing body of such town, shall be payable in ten (10) equal annual installments, and shall bear interest at the rate of seven (7%) per cent, per annum, until paid, payable in each year at such time as the several installments are made payable. The governing body of said town shall, by ordinance, levy assessments in accordance with said appraisement and apportionment, as so confirmed, against the several lots and tracts of land liable therefor. Said ordinance shall provide that the owners of the property so assessed shall have the privilege of paying the amounts of their respective assessments without interest within thirty (30) days from the date of the publication of such ordinance. Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts of land, and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty." Section 6307, O.S.1931, 11 Okl.St.Ann. § 126.

[10] "The governing body of any city or incorporated town, after the expiration of thirty (30) days from the publication of the assessing ordinance, within which period the whole of any assessment may be paid without interest, shall provide by resolution for the issuance of negotiable coupon bonds in the aggregate amount of such assessments then remaining unpaid, bearing date of thirty (30) days after the publication of the ordinance levying the assessments and of such denominations as the governing body of any city or incorporated town and the contractor shall determine, which bonds shall in no event become a liability of the city or town issuing the same. The bonds herein provided for shall be payable on or before October 1 next succeeding the September 1 on which the last installment of assessments shall mature, with interest at the rate of six per cent (6%) per annum, payable October 1 next succeeding the due date of the first installment of assessments, and semiannually thereafter, until maturity and ten per cent (10%) per annum after maturity. Said bonds shall be designated as Street Improvement Bonds, and shall recite the street or streets or part of street or streets, or other public places, for the improvement of which they have been issued and that they are payable from the assessments which have been levied upon the lots and tracts of land benefited by said improvement and from the accumulation of the interest and penalty herein provided for. Said bonds shall be signed by the mayor of such city or president of the board of trustees of such town and attested by the city or town clerk, and shall have an impression of the corporate seal of the city or town thereon, and shall have interest coupons attached thereto bearing fac simile of the signatures of the mayor and city clerk or president of the board of trustees and town clerk, as the case may be; 'and said bonds and interest coupons shall be payable at such place, either within or without the State of Oklahoma as shall be designated therein. Said bonds shall be issued in series, and the bonds of each series shall be numbered consecutively beginning with Number One, and said bonds of each series shall be payable in their numerical order. Such bonds shall be registered by the Clerk and Treasurer of such city or town in a book to be provided for that purpose and each bond shall bear a certificate of such registration, and upon the books of such treasurer shall be noted the name of the holder thereof and his address, and any subsequent holder may cause the same to be registered in the name thereof upon submission of proper proof of ownership. The city or town shall have the right to call in and pay said bonds or any number thereof in the following manner: Whenever there shall be sufficient funds in the hands of the city or town treasurer after the payment of all interest due and to become due within the next six (6) months, such treasurer shall on September 1 of any year give notice by registered mail addressed to the last registered holder of the bonds called, at the

"bonds shall in no event become a liability of the city or town issuing the same."[11]

Under the Oklahoma controlling decisions, the officers of the town or city, rather than the city or town itself, stand in the relation of agent to the bondholders, the town treasurer being liable to the bondholders for damages for failure to call and pay bonds, showing that the treasurer —not the town or city—is liable for any misappropriation of the fund. State ex rel. v. Armstrong, supra; Moroney v. State, supra.

Other cases supporting the Oklahoma holding are as follows: Broad v. City of Moscow, 15 Idaho 606, 99 P. 101; Steiner v. Town of Capitol Heights, 213 Ala. 539, 105 So. 682; Town of Capitol Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A.L.R. 1264; City of Winner v. Kelley, 8 Cir., 65 F.2d 955; Moore v. City of Nampa, 9 Cir., 18 F.2d 860; Life & Casualty Ins. Co. v. City of Florala, 5 Cir., 63 F.2d 195.

In Moore v. City of Nampa, supra, the court said [18 F.2d 862]: "* * * it is uniformly held that in collecting money to pay for special improvements, where there is no liability against the corporation, the corporation authorities do not act as its representatives, but as special agents or instrumentalities to accomplish a public end."

In the instant case the paving fund was held by the treasurer in a separate and distinct right and capacity.

The "Firemen's Relief and Pension Fund."—As specifically provided by statute, it is derived from a state tax on fire insurance premiums, from which firemen's pensions are to be paid, and is under the control of a special board of trustees created for the special purpose.[12]

Said Section 6112, O.S.1931, 11 Okl.St. Ann. § 374, is in part as follows: "All moneys provided for said fund by this act shall be paid over to and received by the treasurer of the city or town for the use and benefit of the firemen's relief and pension fund * * *."

Firemen's pension and relief funds come through the State Insurance Department, and are payable not upon the order of the Town or City Trustees under Section 6645, O.S.1931, 11 Okl.St.Ann. § 1017, but of the special board,[13] and dis-

---

address appearing upon his registry that there has accumulated funds sufficient to pay the designated bonds, and interest thereon to a date thirty (30) days hence from the date such notice, and directing the presentation of such bond or bonds for payment and cancellation, and said bond or bonds will cease to bear interest after expiration of said thirty (30) days, and upon the payment and cancellation of said bond or bonds, proper entry thereof shall be made upon the books of the clerk and treasurer, and it is hereby made the duty of such city or town treasurer upon the accumulation of sufficient funds as herein provided to pay one or more bonds to so call and pay such bond or bonds, and in the event of failure so to do, he shall be liable for all such damages as may result therefrom, and the provisions hereof may be enforced by appropriate proceedings in mandamus against such treasurer." Section 6237, O.S.1931, 11 Okl.St.Ann. § 151.

[11] City of Lawton v. West, 33 Okl. 395, 126 P. 574; City of Beggs v. Kelly, 110 Okl. 274, 238 P. 466, certiorari denied 269 U.S. 584, 46 S.Ct. 121, 70 L.Ed. 425; First National Bank v. Board of Education of City of Enid, 174 Okl. 164, 49 P.2d 1077; Moroney v. State ex rel. Southern Surety Co., 168 Okl. 69, 31 P. 2d 926; State ex rel. Southern Surety Co. v. Armstrong, 158 Okl. 290, 13 P. 2d 198; Severns Paving Co. v. Oklahoma City, 158 Okl. 182, 13 P.2d 94.

[12] Section 6098, O.S.1931, 11 Okl.St. Ann. § 361.

[13] "The mayor or the president of the board of trustees, the clerk and the treasurer of every incorporated city or town in the State of Oklahoma are, in addition to the duties now required of them, hereby created and constituted, together with two members from the fire department of such city or town, a board of trustees of 'The Firemen's Relief and Pension Fund' of the fire department of each such incorporated city or town, and shall provide for the disbursement of such relief and pension fund, and shall designate the beneficiaries thereof, as hereinafter directed, which board shall be known as 'The Board of Trustees of the Firemen's Relief and Pension Fund,' and upon the taking effect of this act, the fire department of each such incorporated city or town shall elect, by ballot, two members of such fire department, one of whom shall serve for the term of one year, and one for the term of four years, and thereafter such fire department shall, every two years, elect by ballot one of its members to serve for the term of four years upon said board of trustees; provided, this chapter shall not apply to any

bursed only upon orders of said special board as set up by the provisions of Section 6098, and the accompanying sections of that act enacted by the legislature, in no sense being muncipally owned funds, but held only in a separate and distinct right and capacity.

Under Article 5, Chapter 33, and Section 6110, supra, 11 Okl.St.Ann. §§ 331 et seq., 372, relating to Cities and Towns, the legislature appropriates and sets aside for the use and benefit of said firemen's relief and pension fund such annual tax from premiums collected by all fire insurance companies in said state, after all cancellations and dividends to policy holders are deducted as provided for by Section 22, Article 1, Chapter 21, Session Laws 1909, 36 Okl.St.Ann. § 104.[14]

Section 6113, O.S.1931, 11 Okl.St.Ann. § 376, provides that such firemen's pension payments should be made monthly upon proper vouchers and in such manner as provided for in other disbursements of such city or town, evidencing the fact that Section 6644, O.S.1931, 11 Okl.St.Ann. § 1016, providing that no account or claim against said town shall be audited or allowed by the board of trustees, referring to the regular board of trustees of said town, unless it be made out fully and itemized, and every such account audited shall be numbered from one upwards in the order they were presented and a memorandum of the same entered upon a book to be kept exclusively for that purpose, has no application to the payment of said pension except by virtue of the provisions of Section 6113, O.S.1931, 11 Okl.St.Ann. § 376, supra.

 Meter Funds.—The meter deposit is a fund which is collected from the users of city water to guarantee the return of the meter which is installed for the benefit of each such user, not being subject to appropriation, but held in trust and belonging to the property owner who secures the use of the meter by making a deposit for its return.

Such fund usually rests upon a local regulatory resolution or ordinance or provision in a franchise.

Its trust character is emphasized by legislative interpretation in an enactment of the 1936 legislature of Oklahoma, after the effective date of the matter here involved.[15]

city or town where no regularly organized fire department is maintained, nor to any city or town where the fire department has fire fighting apparatus of less than $1,000.00 value." Section 6098, O.S.1931, 11 Okl.St.Ann. § 361.

14 "It shall be the duty of the Insurance Commissioner to keep a separate account of the amount of tax paid by the various fire insurance companies as provided by Section 22, Article 1, Chapter 21, Session Laws, 1909, and in his report to the State Auditor and the State Treasurer he shall certify the exact amount which each qualified city or town shall be entitled to receive, and shall certify the total amount of the two per centum on all premiums collected by fire insurance companies in this State after all cancellations and dividends to policy holders are deducted, as provided for by Section 22, Article 1, Chapter 21, Session Laws of 1909, and the State Treasurer shall keep said sum in a fund separate and apart from the general revenue fund, and the same shall be used only for the purposes of this Act. As soon as the State Auditor receives the report of the Insurance Commissioner showing the amount of tax due each city or town as above provided, he shall draw his warrant on the State Treasurer in favor of the treasurer of each city or town for the benefit of the Firemen's Relief and Pension Fund, for the amount to which said fund shall be entitled as shown by the report of the Insurance Commissioner, and shall deliver said warrant to said Treasurer. After the payment of the sums due to each of the cities and towns which have qualified under the terms of said Act, the State Auditor shall determine the amount created by said two per centum on all premiums as aforesaid left in said fund, and shall apportion fifty per cent of it to the various cities and towns which have qualified under said Act, in proportion to the amount paid to each of said cities and towns in accordance with the last payment made to them, and said State Auditor shall draw his warrant on the State Treasurer in favor of the treasurer of each city or town, for the benefit of the Firemen's Relief and Pension Fund, for the amount of which said fund shall be entitled under said apportionment, and shall deliver said warrant to said city or town treasurer." Section 6111, O.S.1931, as amended, 11 Okl.St.Ann. § 373.

15 "From and after the passage and approval of this Act, all monies in the hands of the treasurers of incorporated towns and cities in this State acquired

Being a special fund belonging to the meter depositors, held in trust for them, and subject to withdrawal upon their compliance with the terms of the deposit and for that purpose kept in hand, subject only to the authorized temporary investment in approved securities, it never becomes the property of the city or town.

1. The sinking fund, held for the benefit of the holders of such bonds and such judgment liens, constitutes a separate trust fund for such owners and holders in such capacity in a separate right.

2. The paving fund, held for the benefit of the holders of such paving or improvement bonds, constitutes a separate trust fund for such owners and holders in such capacity in a separate right.

3. The firemen's fund for the firemen's relief and pensions constitutes a trust fund held in such separate capacity and distinct right or agency.

4. The meter fund, made up of deposits in trust for specific purpose, constitutes a separate trust held for such owners in such separate right and capacity.[16]

However, the paving fund, the pension fund, and the meter fund, if grouped with the general fund in one item as a total sum would neither exceed nor equal $5,000.00.

The findings of fact as made by the trial court, the case being tried without the intervention of a jury, are supported by substantial evidence, and his conclusions of law are in conformity therewith.

Costs.—The question is raised as to costs. Appellant being a governmental agency, costs should neither be awarded in its favor nor against it in this action, and the adjudication against the defendant as to costs is eliminated. Paragraph (d), Rule 54, Federal Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c; and Paragraph 4, Rule 25, Revised Rules of the United States Circuit Court of Appeals for the 10th Circuit; United States v. Doherty, D.C.N.D.Neb., 18 F.Supp. 793; Weir v. United States, 7 Cir., 92 F.2d 634, 114 A.L.R. 481; Doherty v. United States, 8 Cir., 94 F.2d 495; United States v. Golden, 10 Cir., 34 F.2d 367; National Home for Disabled Volunteer Soldiers v. Wood, 7 Cir., 81 F.2d 963; Federal Deposit Ins. Corp. v. Mangiaracina, C.C.Essex County, N.J., 198 A. 777, 16 N.J.Misc. 203.

The judgment of the lower court is accordingly modified as to costs and otherwise affirmed.

---

by said treasurers as meter deposits required of the users of municipally owned and operated electric and/or water plants, whether acquired before or after the effective date of this Act, may, pursuant to the passage of an appropriate resolution by the governing board of said incorporated town or city, for the purpose of authorizing such an investment, be invested by the treasurer of said incorporated town or city, in the legally issued general obligations of the United States of America, or of the State of Oklahoma, or in the legally issued bonds of the municipality making said investment; provided however, before any such investment is made by any such treasurer the governing board of said investing municipality shall first approve in writing the securities in which said money is to be invested, the amount of such money being invested, and the price to be paid for the securities in which said investment is to be made provided a price above prevailing market price shall not be paid therefor; and provided further that at the time of the first or any subsequent investment of such monies, no investment of such monies shall be made unless such investment will leave a cash balance in the hands of such treasurers equal to an amount at least five per cent greater than the total number of such meter deposit rebates made by reason of withdrawals thereof by the customers of such utilities, within the twelve months period immediately preceding the date of such investments. Provided, however, the investment of such funds, by any such municipality, shall in no manner impair its obligation to any person, firm or corporation, to refund in full any or all deposits theretofore or thereafter made." Laws 1936, Sess., p. 26, § 1, 11 Okl.St.Ann. § 10.

16 Excerpt from Hearing before the Committee on Banking and Currency, H. R. 5357, Banking Act of 1935, 24 F. Supp. 687, 691.